UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLE BEINER,<br><br>      Plaintiff,<br><br> -against-<br><br>ANGÉLICQUE M. MORENO, Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, in her official capacity; DAVID W. CHANDLER, Chief Attorney of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, in his official capacity; and HECTOR D. LaSALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity,<br><br>      Defendants. | Civil Action No. 24-cv-8600<br><br>**COMPLAINT** |

Plaintiff Nichole Beiner, by and through her attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, for her complaint alleges as follows:

## INTRODUCTION

1. Law professor Tracy Maclin sexually assaulted and sexually harassed his then student, Nichole Beiner ("Ms. Beiner"), the Plaintiff here. Professor Maclin was admitted to practice law by the Second Judicial Department in 1985 and remains a member of the New York Bar.

2. An independent law firm, hired by Professor Maclin's former law school employer, produced an investigative report (the "Report") that substantiated Ms. Beiner's allegations in their entirety. The Report confirmed that Professor Maclin sexually assaulted Ms. Beiner on two occasions and subjected her to repeated sexual harassment while she was his

1

student. The Report also found that Professor Maclin had sexually assaulted another female student.

3. Shortly after the Report was released, Professor Maclin resigned from his professorship and accepted a teaching position at the University of Florida School of Law. On information and belief, Professor Maclin remains employed by the University of Florida as a law professor, where he is able to prey on other students.

4. On April 11, 2023, Ms. Beiner filed a complaint against Professor Maclin with the New York State Attorney Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee" or "Committee"). Ms. Beiner alleged in the complaint that Professor Maclin sexually assaulted and sexually abused her while she was Professor Maclin's student and submitted the Report to substantiate her complaint.

5. The Committee staff at first, shockingly, refused to investigate Ms. Beiner's complaint. After Ms. Beiner made a demand for reconsideration, the Committee concluded a perfunctory investigation and issued a private and confidential decision consisting of a Letter of Admonition.

6. On September 4, 2024, despite Ms. Beiner's request, the Committee refused to give her a copy of its decision, or to give her access to any of its file so that she could know the basis for the Committee's decision.

7. The Committee's refusal to provide these documents to Ms. Beiner violates her First Amendment rights.

8. In *Civ. Rts. Corps v. LaSalle*, No. 21-Civ-9128, 2024 WL 3496607 (S.D.N.Y. July 22, 2024), the U.S. District Court for the Southern District of New York (Marrero, J.) squarely held, earlier this year in a parallel case, that the Grievance Committee cannot deny a complainant, such as Ms. Beiner, access to its decision and to other documents created in an

attorney disciplinary investigation. The Court explicitly held that the First Amendment requires access to attorney disciplinary proceedings of public importance, like this one, stating: "The public cannot have faith in a process that it cannot see."[1]

9. Ms. Beiner now brings this case to enforce her First Amendment right to access the Committee's decision and the Committee's file.

**PARTIES**

10. Plaintiff Nichole Beiner currently resides in Brookline, Massachusetts.

11. Defendant Angélicque M. Moreno is the Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee" or "Committee"). She is sued in her official capacity. The Grievance Committee is an "Attorney Grievance Committee," as defined by 22 N.Y.C.R.R. § 1240.2(d), that is endowed with the power and responsibility to investigate and sanction attorney misconduct and ethical breaches. As Chair of the Grievance Committee, Defendant Moreno is a member of the Grievance Committee and has special responsibilities and powers beyond those of an ordinary Grievance Committee member. *See* 22 N.Y.C.R.R. § 1240.7(e).

12. Defendant David W. Chandler is the Chief Attorney of the Grievance Committee. He is sued in his official capacity. *See* 22 N.Y.C.R.R. § 1240.5. As such, he is empowered to investigate professional misconduct complaints and is obligated to report certain information to a complainant about any disciplinary proceedings resulting from his or her complaint. *See* 22 N.Y.C.R.R. § 1240.7.

13. Defendant Hector D. LaSalle is the Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the

---

[1] *Civ. Rts. Corps v. LaSalle*, No. 21-Civ-9128 (VM), 2024 WL 3496607 (S.D.N.Y. July 22, 2024) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980)).

"Second Department"). He is sued in his official capacity. The Second Department, as one of four Appellate Divisions of the Supreme Court of the State of New York, is vested by the New York legislature with the power and ultimate authority to regulate attorney admissions and conduct within its jurisdiction, including by promulgating rules concerning attorney discipline. *See* New York Judiciary Law § 90(2).

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the Constitution and federal law) and § 1343(a) (action to redress deprivation of civil rights).

15. This action arises under 42 U.S.C. § 1983. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

16. Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this judicial district and all Defendants are residents of New York, or, alternatively, because a substantial part of the events and/or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

*An Independent Investigation Finds that Professor Maclin Sexually Assaulted Ms. Beiner*

17. In 2021, an independent law firm was hired to investigate Professor Tracey Maclin after Ms. Beiner submitted a complaint to her former law school—and Professor Maclin's then-employer—that Professor Maclin had sexually harassed and assaulted her when she was his student.

18. Over the course of their investigation, the law firm conducted interviews with eleven people and reviewed contemporaneous documents, including emails, text messages, voicemails, and calendar entries.

4

19. At the conclusion of its investigation, in a Final Investigative Report dated March 15, 2022, the law firm substantiated the allegations of both Ms. Beiner and another former student who also alleged that Professor Maclin had sexually assaulted that student.

20. Notably, the Report found that "Professor Maclin[] had unwanted physical contact of a sexual nature with Ms. Beiner by kissing her, groping her, causing her to grope him, and causing her to perform sexual acts on him without her consent."

21. The Report also concluded that "Professor Maclin's account [was] not credible by a preponderance of the evidence."

22. After the submission of the Report, Professor Maclin resigned and became employed by the University of Florida's Levin College of Law.

*Ms. Beiner Files a Complaint with the Attorney Grievance Committee*

23. On April 11, 2023, Ms. Beiner, through her attorneys, submitted a formal complaint against Professor Maclin to the Grievance Committee (the "Complaint").

24. In the Complaint, Ms. Beiner accused Professor Maclin of violating N.Y. Rules of Professional Conduct 8.4(b) (engaging in "illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness"), 8.4(c) (engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation") and 8.4(h) (engaging in "any other conduct that adversely reflects on the lawyer's fitness as a lawyer"). The Complaint attached the Report.

25. Initially, the Committee summarily refused to investigate and dismissed Ms. Beiner's Complaint.

26. After Ms. Beiner filed a request for reconsideration to the Committee outlining why her Complaint against Professor Maclin deserved actual consideration, the Grievance Committee relented and purportedly opened an investigation into Professor Maclin's misconduct.

5

27.     Thereafter, on November 21, 2023, the Grievance Committee forwarded to Ms. Beiner a copy of Professor Maclin's Answer to the Complaint; on December 18, 2023, Ms. Beiner sent a Reply to the Grievance Committee outlining the inadequacies of Professor Maclin's Answer; and on December 21, 2023, Professor Maclin submitted a Sur-Reply.

28.     The Grievance Committee never interviewed Ms. Beiner or requested that she submit any additional evidence.

29.     On information and belief, the Committee conducted no further investigation.

30.     On July 25, 2024, the Grievance Committee notified Ms. Beiner of its decision on her Complaint, concluding in pertinent part that: "the Committee found that [Professor Maclin's] conduct constituted a breach of the Rules of Professional Conduct and directed that an ADMONITION be issued to [Professor Maclin] for engaging in conduct that adversely reflects on his fitness as an attorney."

31.     A Letter of Admonition is a form of private discipline issued to attorneys who "committed clear professional misconduct that was not sufficiently serious to warrant the commencement of a formal disciplinary proceeding."[2]

32.     Ms. Beiner could not understand how the Committee could reasonably have substantiated her allegations or fairly found that *sexual assault and harassment* were not "sufficiently serious" to warrant public discipline.

33.     On August 12, 2024, citing and relying on the holding in *Civil Rights Corps v. LaSalle*, Ms. Beiner wrote to then-Committee Chair Andrea Bonina requesting that the Committee provide her with a copy of the Committee's decision and "all the materials

---

[2] *Attorney Matters*, SUP. CT. OF THE STATE OF N.Y. APP. DIV. FOR THE SECOND JUD. DEP'T, https://www.nycourts.gov/courts/ad2/attorneymatters_complaintaboutalawyer.shtml (last visited Oct. 30, 2024).

considered and created during the course of the Committee's investigation into Professor Maclin's misconduct."

34. In response, and notwithstanding Judge Marrero's ruling in *LaSalle*, the Committee refused to provide to Ms. Beiner with either its decision or any other documents arising from her Complaint, concluding, "the matters remain sealed and deemed private and confidential[.]"

*New York Law Keeps Disciplinary Proceedings Confidential*

35. Attorney grievance proceedings are supposed to "protect the public, maintain the integrity and honor of the profession, [and] deter the commission of similar misconduct…" *See* 22 N.Y.C.R.R. § 1240.7(d)(2)(v).

36. Despite this righteous purpose, in almost all cases and disciplinary investigations and proceedings in New York are conducted in secret, out of the public eye.

37. In that regard, New York Judiciary Law § 90(10) expressly requires the sealing and confidentiality of all "complaint[s], inquir[ies], investigation[s,] or proceeding[s] relating to the conduct or discipline of an attorney[.]" This information can only be unsealed and deemed public after a due process hearing and if the Appellate Division finds that public discipline of the attorney is warranted, or "upon good cause being shown[.]"[3]

38. Most attorney grievance procedures throughout the country do not require the same level of confidentiality that is required by New York Judiciary Law § 90(10). Such

---

[3] Making a good cause application as a member of the general public—which includes complainants and respondents in a disciplinary proceeding—is "an academic exercise" that would be "futile." *Civ. Rts. Corps v. LaSalle*, No. 21-cv-9128, 2024 WL 3496607, at *14 (S.D.N.Y. July 22, 2024). Appellate Divisions in New York have only ever granted three good cause applications filed by a member of the general public, and the Second Department has *never* granted a Good Cause Application filed by a member of the general public. *See id.* (citing *In re Aretakis*, 16 A.D.3d 899 (3d Dep't 2005); *In re New York News*, 113 A.D.2d 92 (1st Dep't 1985); *In re Capoccia*, 59 N.Y.2d 549 (3d Dep't 1983)).

7

jurisdictions allow open proceedings following a finding of "probable cause" by an authorized Bar Committee.[4]

39. Many courts in other jurisdictions have found that overbroad confidentiality rules for attorney disciplinary processes violate the First Amendment.[5]

***The U.S. District Court for the Southern District of New York Finds New York Judiciary Law § 90(10) Unconstitutional as Applied***

40. On November 4, 2021, the Civil Rights Corps and several other grievance complainants filed a case in the United States District Court for Southern District of New York alleging, in part, that New York Judiciary Law § 90(10) violated the right of public access protected by the First Amendment of the United States Constitution. Specifically, after the Civil Rights Corps plaintiffs filed complaints with the New York State Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts alleging instances of prosecutorial misconduct, and published those complaints online, the Committee refused to provide the grievants with any information regarding its investigation or disposition of said complaints. In bringing suit, the plaintiffs sought, among other things, a declaratory judgment holding that New York Judiciary Law § 90(10)'s confidentiality provision violates the First Amendment of the U.S.

---

[4] New York State Commission on Statewide Attorney Discipline, Final Report to Chief Judge Jonathan Lippman, the Court of Appeals, and the Administrative Board of the Courts (September 24, 2015) (the "Lippman Commission Report"),
78-79, available at http://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf.

[5] *See, e.g., Doe v. Supreme Court of Fla.*, 734 F. Supp. 981, 988 (S.D. Fla. 1990) (holding that a Florida Bar Rule that prohibited speaking about a meritorious grievance violates the First Amendment); *In re Petition of Brooks*, 678 A.2d 140, 143-46 (N.H. 1996) (holding that a New Hampshire Supreme Court Rule that prohibited a complainant "from revealing the fact that a complaint had been filed, what information or testimony the complainant provided the committee, any action taken by the committee in response to the complaint, and any information acquired by the complainant through interaction with the committee" violates the First Amendment); *R.M. v. Supreme Court*, 883 A.2d 369, 377-82 (N.J. 2005) (holding that a New Jersey Supreme Court Rule that prohibited speech on a "given disciplinary matter and the associated written records" violates the First Amendment); *In re Warner*, 21 So. 3d 218, 262 (La. 2009) (holding that a Louisiana Supreme Court Rule that prohibited speech about attorney disciplinary proceedings until the filing of formal charges violates the First Amendment).

Constitution and an injunction preventing the Committee from enforcing that provision. *See* Complaint, *Civ. Rts. Corps v. Cushman*, No. 21-Civ-9128 (S.D.N.Y. Nov. 4, 2021), ECF No. 1.

41. Although the federal complaint and exhibits were initially filed under seal, the complaint was immediately unsealed, and the exhibits—containing the grievance complaints initially filed by the plaintiffs— were also unsealed three months later. *See Civ. Rts. Corps v. Pestana*, No. 21-Civ-9128, 2022 WL 220020 (S.D.N.Y. Jan. 25, 2022).

42. On July 22, 2024, the Court granted the plaintiffs' motion for summary judgment, holding that "a presumptive First Amendment Right of Access applies to [Grievance Committee] dispositions." *Civ. Rts. Corps v. LaSalle*, No. 21-Civ-9128, 2024 WL 3496607, at *39 (S.D.N.Y. July 22, 2024).

43. Further, the Court held that "a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in the Second Judicial Department… and (2) documents necessary to understand those hearings[.]" *Id.*

44. The Court reasoned that "experience and logic both support a presumptive right of access to Committee dispositions" and that the State had not proffered a "higher value" that supersedes the First Amendment's presumption of access. *Id*. at *36-37.

### FIRST CAUSE OF ACTION
Violation of the First Amendment of the United States Constitution
42 U.S.C. § 1983
(Against All Defendants)

45. Plaintiff realleges as if fully set forth herein the allegations contained in the preceding paragraphs.

46. The First Amendment of the United States Constitution provides the public with a qualified right of access to government proceedings and records.

47. New York State Judiciary Law § 90(10)'s confidentiality provision—as applied to Ms. Beiner's Complaint, the Committee's decision, and the other documents created by the

9

Committee in this matter—violates Ms. Beiner's right of access guaranteed by the First Amendment of the United States Constitution.

48. Here, the Committee acted as an adjudicatory body when it decided the Complaint and chose to issue a Letter of Admonition to Professor Maclin. *See LaSalle*, 2024 WL 3496607, at *32 ("[W]hen the Committee issues dispositions, it makes an authoritative determination on accusations of misconduct and therefore acts in its adjudicative role, not in its prosecutorial role.")

49. Caselaw, experience, and logic all require that the documents created and relied upon during the Committee's adjudicatory processes, including the dispositions of such processes, are entitled to a presumption of access under the First Amendment.

50. In New York, attorney disciplinary complaints were historically heard in a public forum: "The record is clear that by the late nineteenth and early twentieth centuries, attorney disbarment proceedings were public affairs." *See id.* at *27.

51. Additionally, making public the documents created and relied upon by the Committee "diminishes the possibilities for injustice, incompetence, perjury, and fraud." *See id.* at *28.

52. Neither of the dual concerns that New York Judiciary Law § 90(10) aims to protect—shielding a complainant from public disclosure of private information and insulating an attorney from irreparable harm based on unfounded allegations—apply here. First, as the complainant, Ms. Beiner is affirmatively waiving her right to privacy and confidentiality regarding her allegations in the Complaint. Second, there is no concern about unfounded allegations against Professor Maclin because the Grievance Committee determined that Ms. Beiner's allegations of sexual assault and harassment were well founded.

53. Further, "injury to official reputation is an insufficient reason 'for repressing speech that would otherwise be free.'" *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841-42 (1978).

54. Therefore, application of the confidentiality provision set forth in New York Judiciary Law § 90(10) in this case serves no legitimate government interest which could override the presumption of access under the First Amendment.

55. Thus, and as applied to these facts, the First Amendment of the United States Constitution requires that all records and proceedings arising out of Plaintiff's Complaint to the Committee, and in particular the Committee's decision, be made public and otherwise accessible to Ms. Beiner.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants:

a) Declaring that Judiciary Law § 90(10) violates the First Amendment of the United States Constitution insofar as it is applied to deny public access to any and all records and proceedings resulting from the Plaintiff's Complaint to the Committee;

b) Preliminarily and permanently enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from enforcing or attempting to enforce Judiciary Law § 90(1) insofar as it is applied to deny public access to any and all records and proceedings resulting from Plaintiff's Complaint to the Committee;

    c) Ordering Defendants and their employees, agents, and any and all persons acting in concert with them to make public any and all records resulting from Plaintiff's Complaint to the Committee;

    d) Awarding Plaintiff her costs and reasonable attorneys' fees in this action; and,

    e) Any other or further or just relief the Court deems appropriate.

Dated: December 17, 2024
       New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____
Hal R. Lieberman
Zoe Salzman
Sydney Zazzaro
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
hlieberman@ecbawm.com
zsalzman@ecbawm.com
szazzaro@ecbawm.com