UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

............................................................X

NICHOLE BEINER,                              :
                                             :
            Plaintiff,                       :
                                             :
      -against-                              :          No. 24-cv-8600 (FB) (JAM)
                                             :
ANGÉLICQUE M. MORENO, Chair of the State     :
of New York Grievance Committee for the      :
Second, Eleventh, and Thirteenth Judicial    :
Districts, in her official capacity, et al., :
                                             :
            Defendants.                      :
............................................................X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, TO
DISMISS THE COMPLAINT**

                            LETITIA JAMES
                            Attorney General
                            State of New York
                            *Attorney for Defendants*
                            28 Liberty Street
                            New York, New York 10005
                            (212) 416-8673


Yuval Rubinstein
Special Litigation Counsel,
      *of Counsel*

Date of Service:  May 19, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ..........................................................................................................................2

I.      THE *CRC* LAWSUIT.........................................................................................................2

II.     PLAINTIFF'S ALLEGATIONS..........................................................................................4

III.    HISTORY OF ATTORNEY DISCIPLINE.........................................................................5

        A.     United States ............................................................................................................5

        B.     State of New York....................................................................................................7

IV.     NEW YORK'S ATTORNEY DISCIPLINE PROCESS.......................................................9

        A.     Overview of Disciplinary Process Before Grievance Committee .............................9

        B.     Confidentiality of Attorney Disciplinary Records and Proceedings........................11

ARGUMENT .............................................................................................................................12

I.      A MODEST STAY OF PROCEEDINGS PENDING THE SECOND CIRCUIT'S
        DECISION IN *CRC* IS WARRANTED.............................................................................12

II.     IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED.................16

        A.     Standard of Review.................................................................................................16

        B.     Plaintiff's First Amendment Claim is Unripe .........................................................16

        C.     The Court Should Abstain Under *O'Shea* .................................................................18

        D.     The Complaint Fails to State a Plausible First Amendment Claim ..........................21

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*74 Pinehurst LLC v. New York,*
   59 F.4th 557 (2d Cir. 2023), *cert. denied*, 2024 WL 674658 (Feb. 20, 2024) ........................18

*Anonymous J. v. Bar Ass'n of Erie Cnty.,*
   515 F.2d 435 (2d Cir. 1975)...................................................................................................19

*Anonymous Nos. 6 & 7 v. Baker,*
   360 U.S. 287 (1959).................................................................................................................8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................................16, 23

*Bahl v. N.Y. College of Osteopathic Med. of N.Y. Inst. of Tech.,*
   No. 14 Civ. 4020, 2018 WL 4861390 (E.D.N.Y. Sept. 28, 2018)....................................12, 14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................................................................16

*Briggman v. Burton,*
   No. 5:15 Civ. 76, 2016 WL 5462840 (W.D. Va. Sept. 27, 2016) ..........................................23

*Center for Nat'l Sec. Stud. v. United States Dep't of Just.,*
   331 F.3d 918 (D.C. Cir. 2003) ..............................................................................................21

*City of Buffalo v. Smith & Wesson Brands, Inc.,*
   No. 23 Civ. 66, 2023 WL 3901741 (W.D.N.Y. June 8, 2023) ...............................................15

*Civil Rights Corp. et al. v. Pestana, et al.,*
   No. 21 Civ. 9128 (S.D.N.Y.); No. 24-2251 (2d Cir.) ......................................................1, 3, 5

*Coffran v. Board of Trs. of N.Y.C. Pension Fund,*
   46 F.3d 3 (2d Cir. 1995)........................................................................................................17

*CRC v. LaSalle,*
   741 F. Supp. 3d 112 (S.D.N.Y. 2024)...............................................................................3, 24

*Disability Rts. N.Y. v. New York,*
   916 F.3d 129 (2d Cir. 2019)...............................................................................2, 18, 19, 20, 21

*Douglas Oil Co. v. Petrol Stops Nw.,*
   441 U.S. 211 (1979)...............................................................................................................24

*El Vocero de P.R. (Caribbean Int'l News Corp.) v. Puerto Rico,*
   508 U.S. 147 (1993)...............................................................................................................22

*Enron Oil Corp. v. Diakuara*,
    10 F.3d 90 (2d Cir. 1993).................................................................14

*Estate of Heiser v. Deutsche Bank Trust Co.*,
    No. 11 Civ. 1608, 2012 WL 2865485 (S.D.N.Y. July 10, 2012) ......................................13, 14

*Estate of Heiser v. Deutsche Bank Trust Co.*,
    No. 11 Civ. 1608, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ..........................................13

*Estate of Paolello v. Providence Rest, Inc.*,
    No. 22 Civ. 9930, 2023 WL 172200 (S.D.N.Y. Jan. 12, 2023).................................15

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*,
    457 U.S. 596 (1982).................................................................21

*Goldstein v. Time Warner N.Y. City Cable Grp.*,
    3 F. Supp. 2d 423 (S.D.N.Y. 1998) ...........................................14

*Gonzalez de Fuente v. Preferred Home Care of New York, LLC*,
    No. 18 Civ. 6749, 2020 WL 738150 (E.D.N.Y. Feb. 13, 2020)...........................15

*Hartford Courant Co. v. Carroll*,
    986 F.3d 211 (2d Cir. 2021).................................................................19

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978).................................................................21

*In re Search of Fair Fin.*,
    692 F.3d 424 (6th Cir. 2012) .................................................................21

*Joiner v. NHL Enterprises, Inc.*,
    No. 23 Civ. 2083, 2024 WL 639422 (S.D.N.Y. Feb. 15, 2024) .......................13

*Kaufman v. Kaye*,
    466 F.3d 83 (2d Cir. 2006).................................................................18

*Kentucky Press Ass'n v. Kentucky*,
    454 F.3d 505 (6th Cir. 2006) .................................................. 17-18

*Lacewell v. Office of Comptroller of Currency*,
    999 F.3d 130 (2d Cir. 2021).................................................. 16-17

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................12

*Liguori v. Wells Fargo Bank, N.A.*,
    No. 19 Civ. 10677, 2020 WL 5370709 (S.D.N.Y. Sept. 8, 2020)...........................14

*Marchi v. Board of Coop. Educ. Servs. of Albany,*
    173 F.3d 469 (2d Cir. 1999)............................................................................17

*Marshel v. AFW Fabric Corp.,*
    552 F.2d 471 (2d Cir. 1977)..................................................................... 13-14

*Matter of Kelly,*
    59 N.Y. 595 (1875) ...................................................................................8

*Matter of Percy,*
    36 N.Y. 651 (1867) ...................................................................................8

*Matter of Tuck,*
    180 A.D. 924 (1st Dep't 1917) .................................................................8

*McCracken v. Verisma Systems, Inc.,*
    No. 6:14 Civ. 6248, 2018 WL 4233703 (W.D.N.Y. Sept. 6, 2018) .....................13

*McLaughlin v. Philadelphia Newspapers, Inc.,*
    465 Pa. 104 (1975) ..................................................................................24

*Mendez v. Banks,*
    65 F.4th 56 (2d Cir. 2023) ................................................................. 16-17

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982)............................................................................19, 20

*National Park Hosp. Ass'n v. Department of Interior,*
    538 U.S. 803 (2003)................................................................................17

*New York C.L. Union v. New York City Transit Auth.,*
    684 F.3d 286 (2d Cir. 2012).............................................................21, 22, 24

*Newsday LLC v. County of Nassau,*
    730 F.3d 156 (2d Cir. 2013)......................................................................21

*North Jersey Media Grp. v. Ashcroft,*
    308 F.3d 198 (3d Cir. 2002)................................................................ 24-25

*North Jersey Media Grp., Inc. v. United States,*
    836 F.3d 421 (3d Cir. 2016)......................................................................21

*Oneida Indian Nation v. New York,*
    691 F.2d 1070 (2d Cir. 1982).....................................................................8

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)..........................................................2, 3, 18, 19, 20, 21

iv

*People ex rel. Karlin v. Culkin,*
    248 N.Y. 465 (1928) ................................................................................8

*Perez v. Central Credit Services LLC,*
    No. 17 Civ. 6018, 2018 WL 11511603 (E.D.N.Y. Aug. 11, 2018) ...................................12, 15

*Press-Enter. Co. v. Superior Ct. of Cal,*
    464 U.S. 501 (1984) ...............................................................................21

*Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.,*
    478 U.S. 1 (1986) ..................................................................................21

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ...............................................................................22

*Sikhs for Justice v. Nath,*
    893 F. Supp. 2d 598 (S.D.N.Y. 2012) .........................................................13, 14

*Simmonds v. INS,*
    326 F.3d 351 (2d Cir. 2003) .......................................................................17

*Spargo v. New York State Comm'n on Jud. Conduct,*
    351 F.3d 65 (2d Cir. 2003) ........................................................................21

*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ............................................................................. 18-19

*Sullo & Bobbitt, PLLC v. Abbott,*
    No. 3:11 Civ. 1926-D, 2012 WL 2796794 (N.D. Tex. July 10, 2012) ...................................23

*United States v. Kincaide,*
    119 F.4th 1074 (6th Cir. 2024) ....................................................................21

*Whyble v. Nature's Bounty's Co.,*
    No. 20 Civ. 3257, 2022 WL 46673 (S.D.N.Y. Jan. 5, 2022) .........................................13

*Younger v. Harris*
    401 U.S. 37 (1971) .................................................................................18

## CONSTUTIONS

U.S. Const.
    amend. I ....................................................................................... *passim*
    art. III .......................................................................................16, 19

## STATUTES

*Federal*

42 U.S.C. § 1983 .................................................................................5

*New York*

Ch. 946, 1895 N.Y. Laws 796 ...........................................................8

Ch. 295, 1921 N.Y. Laws 1017 .........................................................8

Ch. 649, 1945 N.Y. Laws 1371 .........................................................9

Ch. 675, 1945 N.Y. Laws 1456 .........................................................9

N.Y. Civ. P. Code §§ 67-81 (1876) ..................................................8

N.Y. Jud. Law
    § 90 ..................................................................................... *passim*
    § 90(2) ............................................................................................9
    § 90(7) ............................................................................................9
    § 90(10) ............................................................................. *passim*

**RULES**

*Federal*

Fed. R. Civ. P. 8 ...............................................................................16

Fed. R. Civ. P. 12(b)(1) ...............................................................1, 16

Fed. R. Civ. P. 12(b)(6) .....................................................................1

Fed. R. Evid. 201(b) ...........................................................................8

*New York*

22 N.Y.C.R.R. § 691.4 .....................................................................10

22 N.Y.C.R.R. pt. 1200 .....................................................................10

22 N.Y.C.R.R. pt. 1240 .....................................................................10
    § 1240.4 ...................................................................................10, 23
    § 1240.5 ...................................................................................10, 23
    § 1240.7 ............................................................................... *passim*
    § 1240.8 ............................................................................... *passim*
    § 1240.18 ......................................................................11, 12, 17

*Other Jurisdictions*

Ala. R. Disciplinary P. R. 30 ...................................................................7

Del. Lawyers R. Disciplinary P. 13 ........................................................7

Fla. State Bar R. 3-7.1 .............................................................................7

Iowa Code Ann. § 34.4 ...........................................................................7

N.H. Sup. Ct. R. 37(20) ..........................................................................7

Ore. State Bar R. of P. 1.7(b) .................................................................7

W.V.R. Lawyer Disciplinary P. 2.6 ........................................................7

*Model*

Model Rules for Lawyer Disciplinary En'f r. 10(A)(5)...........................24

**MISCELLANEOUS AUTHORITIES**

ABA, *Problems and Recommendations in Disciplinary Enforcement* (1970) ...............................6

ABA, *Lawyer Regulation for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement* (Sept. 18, 2018)......................7

Carol Rice Andrews: *Standards of Conduct for Lawyers: An 800-Year Evolution,* 57 SMU L. Rev. 1386 (2005) ...............................................5, 6

Mary M. Devlin, The Development of Lawyer Disciplinary Procedures in *The United States*, 7 Geo. J. Legal Ethics 911 (1994) ........................6, 7

James Willard Hurst, *Lawyers in American Society, 1750-1966,* 50 Marq. L. Rev. 594 (1967) ................................................................. 6

Leslie C. Levin, The Case for Less Secrecy in Lawyer Discipline, 20 Geo. J. Legal Ethics 1 (2007).....................................................6, 7, 9

George Martin, *Causes and Conflicts: The Centennial History of the Association Of the Bar of the City of New York 1870-1970* .......................................6, 8

Michael S. McGinniss, *Sending the Message: Using Technology to Support Judicial Reporting of Lawyer Misconduct to State Disciplinary Agencies,* 2013 J. Pro. Law. 37 (2013)........... 7

*New York State Commission on Statewide Attorney Discipline, Final Report to Chief Judge Jonathan Lippman,* ................................................. 22

Charles W. Wolfram, *Toward a Theory of the Legalization of American Legal Ethics – I. Origins,* 8 U. Chi. L. Sch. Roundtable 469 (2001) ............................................. 6

Defendants Angélicque M. Moreno, Presiding Justice Hector D. LaSalle, and David W. Chandler (collectively "Defendants"), by their attorney, Letitia James, New York State Attorney General, respectfully submit this memorandum of law in support of their motion to stay proceedings pending the Second Circuit's decision in *Civil Rights Corps. et al. v. LaSalle, et al.*, No. 21 Civ. 9128 (S.D.N.Y.), No. 24-2251 (2d Cir.) ("*CRC*") or, in the alternative, to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Nichole Beiner ("Plaintiff") brings an as-applied challenge under the First Amendment to N.Y. Judiciary Law § 90(10), which mandates that "all papers, records, and documents" involving attorney discipline matters remain sealed and deemed confidential absent a showing of "good cause." In April 2023, Plaintiff filed a complaint with the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts ("Committee") alleging that a former law professor, who is admitted to practice law in the State of New York, had sexually assaulted Plaintiff and subjected her to sexual harassment. Although the Committee notified Plaintiff that it issued an admonition against the professor, Plaintiff asserts that the First Amendment establishes a public right of access to "any and all records" related to the proceeding, including the Committee's reasoning and the underlying materials that the Committee considered.

Plaintiff's lawsuit relies heavily upon the *CRC* lawsuit filed in the Southern District of New York, which also named Justice LaSalle as a defendant in his official capacity. The plaintiffs in *CRC* similarly alleged that there is a public right of access to certain of the Committee's records and requested a declaratory judgment that § 90(10) violated the First Amendment. On July 22, 2024, the district court granted in part the plaintiffs' motion for summary judgment, and Justice LaSalle filed an appeal. The appeal is now fully briefed, and oral argument before the Second Circuit is calendared for June 26, 2025.

Accordingly, Defendants respectfully request that the Court issue a modest stay of proceedings until the Second Circuit renders its forthcoming decision in *CRC*. The Second Circuit's decision will likely provide guidance to the Court regarding the First Amendment issues that also underlie Plaintiff's similar challenge here to § 90(10), and will thus conserve the resources of the Court and the parties. Nor can Plaintiff articulate any undue prejudice that would weigh against the issuance of a stay.

In the event the Court declines to stay proceedings, the Complaint should be dismissed for lack of subject-matter jurisdiction. First, Plaintiff's claim is unripe because Plaintiff failed to submit a good-cause application to obtain the Committee's disposition and the underlying documents, as set forth in § 90(10). The Complaint should also be dismissed on abstention grounds under *O'Shea v. Littleton*, 414 U.S. 488 (1974), as the sweeping relief Plaintiff requests would improperly require courts to "legislate and engraft new procedures upon" New York's attorney disciplinary process. *Disability Rts. N.Y. v. New York*, 916 F.3d 129, 136 (2d Cir. 2019).

If the Court decides to reach the merits, it should dismiss the Complaint under Rule 12(b)(6). Neither history nor logic supports extending a public right of access to the Committee's confidential records. The Committee's investigatory process has remained confidential since its inception, and today most States maintain the confidentiality of disciplinary matters until the initiation of formal disciplinary proceedings. Opening the Committee's records and internal deliberations to the public would intrude on and impair the disciplinary process. The Court should therefore grant Defendants' motion and dismiss the Complaint with prejudice.

## **BACKGROUND**

## I.     **THE *CRC* LAWSUIT**

In May 2021, six law professors submitted 21 complaints against current and former Queens County prosecutors, which were consolidated before the Committee. *See* Exhibit ("Ex.") A, *Civil Rights Corps., et al. v. Pestana, et al.* Complaint, at ¶ 48.[1] The professors had found published judicial decisions involving the prosecutors in which courts had reversed criminal convictions for prosecutorial misconduct. *Id.*

In November 2021, the professors and a nonprofit organization collectively filed a federal lawsuit against Justice LaSalle, as well as other state and local officials. The plaintiffs alleged, in relevant part, that § 90(10) violates the First Amendment by infringing on a purported public right of access to attorney disciplinary proceedings and records. Ex. A, at ¶¶ 97-107. The plaintiffs sought a declaration that § 90(10) is unconstitutional as applied to deny them access to the records or proceedings related to complaints of prosecutorial misconduct that they "have filed or may file," and an injunction prohibiting the named defendants from enforcing the statute against them. *See* Prayer For Relief, ¶¶ (A) – (J).

On July 22, 2024, the U.S. District Court for the Southern District of New York (Marrero, J.) granted in part the plaintiffs' motion for summary judgment, denied Justice LaSalle's cross-motion, and entered a declaratory judgment in plaintiffs' favor. *See CRC v. LaSalle*, 741 F. Supp. 3d 112 (S.D.N.Y. 2024). The district court determined, in relevant part, that the plaintiffs' claims were ripe and that *O'Shea* abstention was unwarranted. *Id.* at 141-42, 148-51. On the merits, the district court declared a public right of access to any Committee dispositions, as well as formal disciplinary hearings and related documents, associated with the plaintiffs' 2021 complaints. *Id.* at 162-68. The district court also declared that the plaintiffs' access to the proceedings and records

---

[1] All exhibits are attached to the accompanying Declaration of Yuval Rubinstein, dated May 19, 2025.

related to their 2021 complaints "may not be restricted absent specific, on-the-record findings." *Id.* at 171.

Justice LaSalle appealed the July 22, 2024 order to the Second Circuit. *See CRC v. LaSalle*, No. 24-2251 (2d Cir.). On December 4, 2024, Justice LaSalle filed his opening brief, arguing that the district court erred in determining that the plaintiffs' claims were ripe and that abstention was unwarranted, and further erred in determining that the plaintiffs possess a First Amendment right of access to attorney disciplinary proceedings and records. *See* 2d Cir. ECF No. 25. On March 5, 2025, the plaintiffs filed their opposition brief, ECF No. 33, and Justice LaSalle filed his reply on March 26, 2025. ECF No. 49. The appeal is currently calendared for oral argument for June 26, 2025. ECF No. 53.

## II.    PLAINTIFF'S ALLEGATIONS

On April 13, 2023, Plaintiff submitted a complaint to the Committee against a former law professor. *See* Complaint, ECF No. 13, at ¶ 23.[2] The Committee complaint allegedly attached a report prepared by a law firm in 2021 that was hired to investigate Plaintiff's allegations of sexual assault and sexual harassment against the former professor. *Id.* at ¶¶ 17-22, 24. Plaintiff's complaint to the Committee alleged that the professor's conduct violated New York Rules of Professional Conduct 8.4(b), 8.4(c), and 8.4(h). *Id.* at ¶ 24. Plaintiff alleges that the Committee initially dismissed the complaint without an investigation, and after Plaintiff filed a request for reconsideration, the Committee then opened an investigation. *Id.* at ¶¶ 25-26.

---

[2]    The plausible and non-conclusory factual allegations set forth in Plaintiff's Complaint are accepted as true only for purposes of this motion. Defendants do not admit the truth of Plaintiff's allegations.

On July 25, 2024, the Committee notified Plaintiff that an admonition, a form of private discipline, had been issued. *Id.* at ¶ 30.[3] On August 12, 2024, Plaintiff allegedly wrote a letter to then-Committee Chair Andrea Bonina "citing and relying on the holding in *Civil Rights Corps v. LaSalle.*" *Id.* at ¶ 33. Plaintiff requested that the Committee provide a copy of the decision containing the complete basis for issuing the admonition as well as "all the materials considered and created during the course of the Committee's investigation[.]" *Id.* Plaintiff alleges that the Committee declined to provide its decision or other documents arising from Plaintiff's complaint, stating that "the matters remain sealed and deemed private and confidential[.]" *Id.* at ¶ 34.

Plaintiff subsequently filed this action on December 17, 2024. The Complaint asserts a single cause of action pursuant to 42 U.S.C. § 1983, alleging that § 90(10)'s confidentiality provision violates Plaintiff's "right of access guaranteed by the First Amendment[.]" *Id.* at ¶ 47. The Complaint extensively relies upon the district court's decision in *CRC. Id.* at ¶¶ 8, 40-44, 48, 50-51. The Complaint requests declaratory and injunctive relief, as well as an order requiring Defendants "to make public any and all records resulting from Plaintiff's Complaint to the Committee." *See* Prayer For Relief, ¶¶ (a) – (c).

## III.     HISTORY OF ATTORNEY DISCIPLINE

### A.     United States

Attorney discipline in the United States was a rarity before the twentieth century, invoked only in extreme cases.[4] Attorneys were regulated through ad hoc proceedings in open court

---

[3]     The disposition of an admonition, set forth in 22 N.Y.C.R.R § 1240.7(d)(2)(v), is further described below. *See infra* at 10-11.

[4]     Carol Rice Andrews, *Standards of Conduct for Lawyers: An 800-Year Evolution*, 57 SMU L. Rev. 1385, 1417 & nn. 222-223, 1438 & n. 401 (2005).

conducted as equity suits or contempt proceedings.[5] Otherwise, lawyers might meet casually to "administer informal discipline to their fellow members on the basis of incidents that occurred that day in court."[6]

States began moving away from ad hoc lawsuits toward more organized disciplinary models that included private proceedings and situated disciplinary authority in state bar associations or court agencies.[7] Bar associations regularly investigated complaints, held hearings, and recommended to courts whether discipline should be imposed.[8]

These disciplinary proceedings were generally closed to the public. Most States "direct[ed] that the existence of a disciplinary proceeding be kept confidential until a trial has been held, the charges have been found sustained and the record filed in the court having disciplinary jurisdiction."[9] Only a few states allowed full public disclosure upon the filing of an initial complaint, while states allowing disclosure were generally "those that provide[d] for trial of the charges by one or more judges rather than by referees, trial committees or a disciplinary commission."[10]

In 1970, the ABA's seminal report on the state of attorney discipline recommended centralizing disciplinary authority in state courts while maintaining the confidentiality of disciplinary proceedings.[11] The ABA recommended that disciplinary proceedings remain

---

[5]     Charles W. Wolfram, *Toward a History of the Legalization of American Legal Ethics—I. Origins*, 8 U. Chi. L. Sch. Roundtable 469, 474-76 (2001); Mary M. Devlin, *The Development of Lawyer Disciplinary Procedures in the United States*, 7 Geo. J. Legal Ethics 911, 912 (1994).

[6]     James Willard Hurst, *Lawyers in American Society 1750-1966*, 50 Marq. L. Rev. 594, 602 (1967).

[7]     Andrews, *supra*, at 1452.

[8]     *See, e.g.,* George Martin, *Causes and Conflicts: The Centennial History of the Association of the Bar of the City of New York 1870-1970*, at 361-63 (1970); Leslie C. Levin, *The Case for Less Secrecy in Lawyer Discipline*, 20 Geo. J. Legal Ethics 1, 14 (2007).

[9]     ABA, *Problems and Recommendations in Disciplinary Enforcement* 138 (1970) (hereinafter "Clark Report").

[10]     *Id.*

[11]     *Id.* at xiv-xvi, 138.

confidential "until hearings have been held and the charges sustained by the trial authority," unless the proceeding was based on the conviction of a crime or the respondent attorney waived confidentiality.[12] The ABA observed that premature disclosure of disciplinary charges "may itself result in irreparable harm to the attorney," whereby the attorney's "practice may be diminished, if not substantially destroyed, by the resulting lack of confidence of old and new clients, judges before whom he has to appear and fellow attorneys with whom he must negotiate."[13] Finally, to discourage the wholesale dismissal of complaints involving minor misconduct, the report recommended confidential admonitions.[14]

Although the ABA later recommended making disciplinary charges public after a finding of probable cause,[15] as of 1982, "only nine states provided public access to lawyer disciplinary hearings."[16] Over time, States continued to adjust their respective policies. Today, most States maintain the confidentiality of attorney disciplinary matters until a finding of probable cause,[17] and at least four States maintain the confidentiality of attorney disciplinary matters until formal charges are sustained.[18]

### B.    State of New York

---

[12]    *Id*. at 138.

[13]    *Id.* at 139.

[14]    *Id.* at 93-96.

[15]    ABA, *Lawyer Regulation for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement* (Sept. 18, 2018) (Recommendation 7).

[16]    Devlin, *supra*, at 928.

[17]    Levin, *supra*, at 21; Michael S. McGinniss, *Sending the Message: Using Technology to Support Judicial Reporting of Lawyer Misconduct to State Disciplinary Agencies*, 2013 J. Pro. Law. 37, 81 (2013). A few States provide public access to certain records before a finding of probable cause. *See* Fla. State Bar R. 3-7.1; N.H. Sup. Ct. R. 37(20); Ore. State Bar R. of P. 1.7(b); W.V. R. Lawyer Disciplinary P. 2.6.

[18]    *See* N.Y. Jud. Law § 90(10); Ala. R. Disciplinary P. R. 30; Del. Lawyers R. Disciplinary P. 13; Iowa Code Ann. § 34.4.

Prior to 1895, the General Term of the Supreme Court of New York had the authority to discipline attorneys. *See, e.g.*, *Matter of Percy*, 36 N.Y. 651, 651 (1867); Ex. B, § 68 of the Code of Civil Procedure of the State of New York, as Enacted in 1876, and Amended in 1877, 1878, and 1879.[19] New York courts adjudicated these matters as equity suits or contempt proceedings, which were often initiated by a private complainant. *See, e.g.*, *Matter of Kelly*, 59 N.Y. 595, 596 (1875). In addition to the possibility of court-imposed disbarment, attorneys guilty of certain offenses were liable in damages to any party they injured and could be found guilty of a misdemeanor. *See* Ex. B, at §§ 67-81 (1876). These adversarial proceedings were "of a public nature and quasi criminal." *Matter of Kelly*, 59 N.Y. at 596.

In 1895, shortly after New York established the Appellate Division of the Supreme Court, the Legislature assigned to the four departments of the Appellate Division exclusive control over attorney discipline. *See* Ex. C, Ch. 946, 1895 N.Y. Laws 796, 800-01. By the early twentieth century, New York courts had power to authorize confidential investigations into suspected attorney misconduct. *See People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 478-79 (1928); *Anonymous Nos. 6 & 7 v. Baker*, 360 U.S. 287, 294 (1959). In place of adversarial proceedings initiated by private complainants, the Legislature authorized the Appellate Division to appoint local bar associations and district attorneys to prosecute attorney disciplinary matters. *See* Ex. D, Ch. 295, 1921 N.Y. Laws 1017, 1017-18; *Matter of Tuck*, 180 A.D. 924, 924 (1st Dep't 1917).

In 1909, the New York State Bar Association adopted the ABA's canons of professional ethics.[20] With these developments, the number of disciplinary complaints skyrocketed. In 1897,

---

[19] The Court may take judicial notice of the historical records annexed to Defendants' motion pursuant to Fed. R. Evid. 201(b). *See Oneida Indian Nation v. New York*, 691 F.2d 1070, 1086 (2d Cir.1982) (judicial notice of "law, legislative facts, or factual matters that are incontrovertible" are admissible).

[20] Martin, *supra*, at 373.

the Association of the Bar of the City of New York received thirty-five complaints against lawyers; in 1920, it received 847.[21] From the outset, the association "adopted procedures to keep the proceedings secret" until it took allegations of misconduct to a court.[22]

In 1945, the Legislature consolidated the Appellate Division's statutory authority over attorney discipline at § 90 of the Judiciary Law. *See* Ex. E, Bill Jacket from 1945, Ch. 649; Ex. F, Excerpt From Tenth Annual Report of the Judicial Council of the State of New York (1944). The Legislature also mandated that attorney disciplinary proceedings and related documents remain confidential unless and until the charges are sustained. Ex. G, Ch. 675, 1945 N.Y. Laws 1456, 1457. The bill jacket contained documents explaining that this confidentiality rule would protect attorneys from unsupported allegations of misconduct, guard against the unwarranted disclosure of sensitive personal information, and encourage cooperation in disciplinary proceedings. *See* Ex. E. In the decades that followed, the New York legal community has debated the issue of confidentiality,[23] but the Legislature has chosen to maintain its longstanding policy of confidentiality.

## IV.  NEW YORK'S ATTORNEY DISCIPLINE PROCESS

### A.  Overview of Disciplinary Process Before Grievance Committee

The Appellate Division of the Supreme Court of New York is responsible for the oversight and discipline of New York attorneys, N.Y. Jud. Law § 90(2), and "may appoint any attorney . . . to conduct a preliminary investigation and to prosecute any disciplinary proceedings," *id.* § 90(7). Attorney conduct is primarily governed by the Rules of Professional Conduct. *See* 22 N.Y.C.R.R.

---

[21]     *Id.* at 364.

[22]     Levin, *supra*, at 15.

[23]     *See* N.Y. State Comm'n on Statewide Att'y Discipline, Enhancing Fairness and Consistency, Fostering Efficiency and Transparency 71 (2015) (describing confidentiality as "most difficult and divisive" issue), *available at* https://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf

pt. 1200. In 2016, the departments jointly adopted the Rules for Attorney Disciplinary Matters. *See* 22 N.Y.C.R.R. pt. 1240.[24] Pursuant to these rules, each department appoints one or more attorney grievance committees. In the Second Department, the Court appoints three grievance committees, with the relevant committee in this case encompassing the Second, Eleventh, and Thirteenth judicial districts. *See* 22 N.Y.C.R.R. § 691.4(a); 22 N.Y.C.R.R. §§ 1240.4-1240.5. The chief purpose of the Committee is to enforce the Rules. *See* § 691.4(a) (noting that each of the three grievance committees is charged with the "duty and power to investigate and prosecute…").

Attorney disciplinary matters generally proceed in three steps. First, the chief attorney and staff screen any incoming complaint for jurisdictional and substantive sufficiency. The chief attorney may decline to investigate a complaint that does not allege professional misconduct, contains allegations related to another pending legal action or proceeding, seeks a legal remedy more appropriately obtained in another forum, or involves a person or conduct not covered by Part 1240. *See* 22 N.Y.C.R.R. § 1240.7(d)(1)(i). Second, the chief attorney and staff investigate complaints that survive that screening and present the results to the Committee. The Committee's investigation then culminates in one of several dispositions.

The Committee may dismiss the complaint, refer the matter for resolution in an alternate forum, or refer the respondent to a diversion program. *See* 22 N.Y.C.R.R. § 1240.7(d)(2)(i)-(iii). The Committee may issue a letter of advisement where "the respondent has engaged in conduct requiring comment that, under the facts of the case, does not warrant imposition of discipline." *Id.* § 1240.7(d)(2)(iv). The Committee may also issue an admonition if it finds, "by a fair preponderance of the evidence, that the respondent has engaged in professional misconduct, but that public discipline is not required to protect the public, maintain the integrity and honor of the

---

[24]     https://ww2.nycourts.gov/sites/default/files/document/files/2018-06/22%20NYCRR%20Part%201240.pdf

profession, or deter the commission of similar misconduct." *Id.* § 1240.7(d)(2)(v). Finally, the Committee may authorize the institution of a formal disciplinary proceeding, which the chief attorney and staff prosecute, where "there is probable cause to believe that the respondent engaged in professional misconduct warranting the imposition of public discipline, and that such discipline is appropriate to protect the public, maintain the integrity and honor of the profession, or deter others from committing similar misconduct." *Id.* § 1240.7(d)(2)(vi). The complainant and respondent are notified of the Committee's decision pursuant to § 1240.7(d)(3), and, in certain circumstances, may seek review or reconsideration. *See* 22 N.Y.C.R.R. § 1240.7(e).[25]

Third, the Committee prosecutes a formal disciplinary proceeding in the Appellate Division where one has been authorized, and ultimately the Appellate Division considers whether to impose public discipline. *See* 22 N.Y.C.R.R. §§ 1240.7-1240.8.

## B.     Confidentiality of Attorney Disciplinary Proceedings and Records

Pursuant to New York law, "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." N.Y. Jud. Law § 90(10). In addition, proceedings before the Committee or the Appellate Division "shall be closed to the public." 22 N.Y.C.R.R. § 1240.18(c).

New York law provides for public access to state attorney disciplinary records and proceedings under certain circumstances. For example, when the Appellate Division sustains formal disciplinary charges and imposes public discipline, the records and documents related to the proceeding "shall be deemed public records." N.Y. Jud. Law § 90(10). In addition, members of the public may obtain access to attorney disciplinary investigations, proceedings, and records

---

[25]     However, the complainant is only afforded the right to "a brief description of the basis of any disposition of a complaint by the committee" and not the Committee's full decision. 22 N.Y.C.R.R. § 1240.7(d)(3).

by applying to the Appellate Division and showing good cause for the requested access. *See* N.Y. Jud. Law § 90(10). Good-cause applications are directed to the presiding justice of the Appellate Division and must specify: "(1) the nature and scope of the inquiry or investigation for which disclosure is sought; (2) the papers, records or documents sought to be disclosed, or the proceedings that are sought to be opened; and (3) other methods, if any, of obtaining the information sought, and the reasons such methods are unavailable or impractical." 22 N.Y.C.R.R. § 1240.18(d).

## ARGUMENT

## I.  A MODEST STAY OF PROCEEDINGS PENDING THE SECOND CIRCUIT'S DECISION IN *CRC* IS WARRANTED

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Perez v. Central Credit Services, LLC*, No. 17 Civ. 6018, 2018 WL 11511603, at *1 (E.D.N.Y. Aug. 11, 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In determining whether to grant a stay of proceedings, "courts consider the following factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Bahl v. N.Y. College of Osteopathic Med. of N.Y. Inst. of Tech.*, No. 14 Civ. 4020, 2018 WL 4861390, at *2 (E.D.N.Y. Sept. 28, 2018) (internal quotation marks omitted).

Each of these factors weighs decisively in favor of granting a stay pending the Second Circuit's decision in *CRC*. First, Plaintiff will not be unduly prejudiced by a stay. Plaintiff filed her 2023 Committee complaint several years after the alleged encounters with the former law

professor, and Plaintiff had the opportunity to pursue criminal or civil remedies.[26] ECF No. 13, at ¶¶ 17-18, 23. *See Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (stay was unlikely to prejudice or cause hardship to plaintiffs where alleged conduct giving rise to causes of action occurred several years before).

In addition, Plaintiff is not seeking compensatory damages, nor is the prospective relief requested in the Complaint time-pressing. In fact, Plaintiff *already knows* the Committee's disposition, and merely seeks to learn the underlying "basis" for its decision. ECF No. 13, at ¶ 6. Accordingly, Plaintiff cannot articulate any compelling need to proceed with this lawsuit before the Second Circuit renders its decision in *CRC. See Whyble v. Nature's Bounty's Co.*, No. 20 Civ. 3257, 2022 WL 46673, at *3 (S.D.N.Y. Jan. 5, 2022) (noting there is "little prejudice" to plaintiffs if stay is granted where dispute "is one of law, and not one that can be compromised by unavailable witnesses, fading memories, or lost documents") (internal quotation marks omitted).

The advanced stage of the *CRC* appeal further weighs against any prejudice to Plaintiff. The *CRC* appeal is already fully briefed, and oral argument is calendared for June 26, 2025. *See supra* at 3-4. District courts within this Circuit have granted stays of proceedings where an appeal before the Second Circuit was less advanced than in this case. *See Estate of Heiser v. Deutsche Bank Trust Co.*, No. 11 Civ. 1608, 2012 WL 2865485, at *4 (S.D.N.Y. July 10, 2012), *R&R adopted*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) (noting "there is little likelihood of a prolonged delay in this case" where appeal before Second Circuit would be fully briefed by September 14, 2012); *see also Joiner v. NHL Enterprises, Inc.*, No. 23 Civ. 2083, 2024 WL 639422, at *2 (S.D.N.Y. Feb. 15, 2024) (issuing stay of proceedings where related case before

---

[26]     Although the Complaint does not identify the year of Plaintiff's graduation from law school, the Court may take judicial notice that Plaintiff was admitted to the Massachusetts state bar on November 18, 2015. *See* Massachusetts Board of Bar Overseers, at https://www.massbbo.org/s/ (last visited May 7, 2025).

Second Circuit "is likely to be argued during the week of April 1, 2024, and decided reasonably soon thereafter").

Nor does Plaintiff's stated interest in a swift resolution of this lawsuit amount to undue prejudice. It is well-settled that "'delay standing alone does not establish prejudice'" to deny a stay request. *Liguori v. Wells Fargo Bank, N.A.*, No. 19 Civ. 10677, 2020 WL 5370709, at *4 (S.D.N.Y. Sept. 8, 2020) (quoting *Enron Oil Corp. v. Diakuara*, 10 F.3d 90, 98 (2d Cir. 1993)); *see McCracken v. Verisma Systems, Inc.*, No. 6:14 Civ. 6248, 2018 WL 4233703, at *3 (W.D.N.Y. Sept. 6, 2018) (delay of proceedings does not "in and of itself" establish undue prejudice given that "delay results inherently from the issuance of a stay") (internal quotation marks omitted). Because "the basic goal is to avoid prejudice to either party," *Bahl*, 2018 WL 4861390, at *2 (internal quotation marks omitted), the absence of undue prejudice to Plaintiff weighs heavily in favor of granting a stay.

The second factor also favors a stay of proceedings. It is wholly unnecessary for the parties to expend time and resources briefing the very same legal issues pertaining to ripeness, abstention and First Amendment challenges to § 90(10) that are pending decision before the Second Circuit in *CRC*. *See Estate of Heiser*, 2012 WL 2865485, at *4 (respondent's interests "would clearly be secured by a stay" because Second Circuit's decision "would potentially absolve [respondent] of the need to litigate a variety of issues otherwise presented here and thus avoid the need for unnecessary litigation").

The third factor similarly counsels in favor of a stay, as the Second Circuit's "resolution of [the *CRC*] appeal should guide this Court" in resolving this case. *Goldstein v. Time Warner N.Y. City Cable Grp.*, 3 F. Supp. 2d 423, 439 (S.D.N.Y. 1998); *see Sikhs for Justice*, 893 F. Supp. 2d at 622 (stay is justified "when a higher court is close to settling an important issue of law bearing

on the action") (citing *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir.1977)). The Second Circuit's determination of Justice LaSalle's ripeness and abstention arguments in *CRC* "may bear on whether this Court has subject-matter jurisdiction over this case." *Estate of Paolello v. Providence Rest, Inc.*, No. 22 Civ. 9930, 2023 WL 172200, at *1 (S.D.N.Y. Jan. 12, 2023).

With respect to the merits of Plaintiff's First Amendment claim, a ruling in *CRC* in favor of Justice LaSalle regarding the constitutionality of § 90(10) will likely be dispositive of Plaintiff's case here. A stay of proceedings would thus obviate the need for the Court to expend judicial resources resolving the same legal issues being considered in the *CRC* appeal. Even if the Second Circuit does not vacate in full the district court's decision in *CRC*, the ensuing decision will likely provide guidance to the Court regarding the contours of any right of access under the First Amendment. *Perez*, 2018 WL 11511603, at *1 ("the Court and the parties share an interest in conserving resources while a case is pending that may clarify issues raised in the instant case"); *City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 23 Civ. 66, 2023 WL 3901741, at *2 (W.D.N.Y. June 8, 2023) (Second Circuit appeal that "is fully briefed and is awaiting oral argument" will likely "provide at least *some* guidance to the Court and to the parties regarding the interpretation of" State statute being challenged) (emphasis in original).

Finally, the fourth and fifth factors support a stay "because issues of judicial economy affect the interests of non-parties and the public." *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, No. 18 Civ. 6749, 2020 WL 738150, at *3 (E.D.N.Y. Feb. 13, 2020). In addition, awaiting the decision in *CRC* will avoid "the possibility of issuing a ruling inconsistent the [Second Circuit's] eventual ruling[.]" *Id.* at *4.

In sum, a modest stay of proceedings pending the Second Circuit's decision in *CRC* is reasonable and well-justified based upon the foregoing balance of factors.

## II.  IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED

### A.  Standard of Review

Rule 12(b)(1) requires that a complaint be dismissed where the court lacks subject-matter jurisdiction. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57). The pleading requirements under Rule 8 "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where a Plaintiff has failed to "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

### B.  Plaintiff's First Amendment Claim is Unripe

"Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts." *Mendez v. Banks*, 65 F.4th 56, 60 (2d Cir. 2023) (quotation marks omitted), *cert. denied*, 144 S. Ct. 559 (2024). "For a cause of action to be ripe, and therefore justiciable, it must present a real, substantial controversy, not a mere hypothetical question." *Id.* (quotation marks omitted). In this regard, constitutional ripeness overlaps with Article III standing, "most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical."

*Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (quotation marks omitted). "A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Mendez*, 65 F.4th at 60 (quotation marks omitted).

In addition to constitutional ripeness, courts also consider whether there are "prudential reasons for refusing to exercise jurisdiction." *National Park Hosp. Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003) (quotation marks omitted). This doctrine of prudential ripeness asks "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Simmonds v. INS*, 326 F.3d 351, 359 (2d Cir. 2003).

As a threshold matter, Plaintiff's First Amendment claim is unripe for judicial review— both as a constitutional and prudential matter—because no government entity has denied Plaintiff public access to the information she seeks. Judiciary Law § 90(10) and its implementing regulations provide for applications "to unseal confidential documents or records, or for access to proceedings that are closed," 22 N.Y.C.R.R. § 1240.18(d), based on good cause. Yet Plaintiff does not allege that she ever submitted a good-cause application to access the Committee's disposition and underlying materials. Absent a ruling on whether Judiciary Law § 90(10) bars Plaintiff's access to the information requested, there is no definite and concrete dispute as required to demonstrate the ripeness of Plaintiff's as-applied claims. *See Marchi v. Board of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999); *Coffran v. Board of Trs. of N.Y.C. Pension Fund*, 46 F.3d 3, 4 (2d Cir. 1995) (*per curiam*).

Courts have dismissed claims on ripeness grounds under similar circumstances. For example, the Sixth Circuit rejected as unripe a news organization's claim that a state law unconstitutionally denied the media access to certain juvenile proceedings. *Kentucky Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006). The law permitted access only to persons with "a

direct interest in the case or in the work of the court" or "for good cause." *Id.* (quotation marks omitted). Because the plaintiff never petitioned for access under this provision, it remained unresolved "whether Kentucky law, as interpreted by the Kentucky courts, completely closes juvenile proceedings and records to the media." *Id.* at 510.

Here, Plaintiff similarly cannot show that Judiciary Law § 90(10) denied her access to the requested information where Plaintiff did not even attempt to utilize the available options for doing so. Plaintiff briefly alleges in the Complaint that any such application would be futile, claiming that few good-cause applications have been previously granted. ECF No. 13, at ¶ 37, n.3. But mere speculation that a good-cause application would have been denied because few applications have been granted in the past is inadequate to demonstrate futility. *See, e.g., 74 Pinehurst LLC v. New York*, 59 F.4th 557, 565 (2d Cir. 2023), *cert. denied*, No. 22-1130, 2024 WL 674658 (Feb. 20, 2024).[27]

### C. The Court Should Abstain Under *O'Shea*

Under *O'Shea* and its progeny, federal courts have "'no power to intervene in the internal procedures of the state courts' and cannot 'legislate and engraft new procedures upon existing state . . . practices.'" *Disability Rts.*, 916 F.3d at 136 (quoting *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006)). Abstention under *O'Shea* is rooted in principles of federalism and comity and derives from *Younger v. Harris*, 401 U.S. 37 (1971), which provides that federal courts cannot intrude into state criminal or civil enforcement proceedings, or into "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*

---

[27]     The district court's determination that the *CRC* plaintiffs' claims were ripe was also erroneous in conflating Article III's requirement of ripeness with administrative exhaustion; incorrectly determining that the plaintiffs' lack of standing as complainants to receive status updates meant they were denied access as members of the public, when they never submitted a good-cause application; and mistakenly crediting the plaintiffs' conclusory assertion that any good-faith application would be futile. *See* 2d Cir. ECF No. 25, at 36-39.

*Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quotation marks omitted). These federalism principles apply fully to state attorney disciplinary proceedings, which implicate a State's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982); *see also Anonymous J. v. Bar Ass'n of Erie Cnty.*, 515 F.2d 435, 437 (2d Cir. 1975) (*per curiam*). However, unlike abstention under *Younger*, abstention under *O'Shea* applies even in the absence of a pending state proceeding. *O'Shea*, 414 U.S. at 500.

*O'Shea* abstention is particularly appropriate in this case. The Complaint requests a judgment declaring a First Amendment public right of access to "any and all records and proceedings" of the Committee. ECF No. 13, Prayer for Relief, ¶(a). Although Plaintiff's lawsuit is styled as an as-applied challenge limited to Plaintiff's complaint to the Committee, declaring a public right of access to the materials at issue would have far-reaching consequences. Indeed, Plaintiff's First Amendment claim depends on finding a public right of access, an inquiry which turns on the nature of the proceeding at issue and not any case-specific factors. *See Hartford Courant Co. v. Carroll*, 986 F.3d 211, 219 (2d Cir. 2021). Thus, future complainants would likely cite this Court's decision as precedent, just as Plaintiff relies heavily upon the recent *CRC* decision. *See, e.g.*, Gillian E. Metzger, *Facial Challenges and Federalism*, 105 Colum. L. Rev. 873, 881 (2005) ("[S]tare decisis means successful as-applied challenges often generate results that are not specific to a particular challenger.").

Accordingly, the sweeping relief Plaintiff seeks would, in this and future cases, require federal courts to "legislate and engraft new procedures upon" New York's longstanding attorney disciplinary process. *Disability Rts.*, 916 F.3d at 136 (quotation marks omitted). For example, New York law grants attorney grievance committees and the Appellate Division discretion to assess

whether private or public discipline is warranted based on the facts of the case. *See* 22 N.Y.C.R.R. §§ 1240.7(d)(2)(iv)-(v), 1240.8(b)(2). But declaring that there is a public right of access to *all* Committee dispositions, records and proceedings would profoundly undermine the availability of a private admonition or advisement as an ultimate outcome in future disciplinary proceedings. Such an outcome would also undermine existing decisions to impose these dispositions in proceedings that have already concluded, like the proceeding at issue here.

The Committee and the Second Department would likely be subject to onerous "case-by-case oversight" by federal courts as well. *Disability Rts.*, 916 F.3d at 135-36. In the event this Court were to find, as in *CRC*, that a public right of access applies absent specific on-the-record findings sufficient to justify continued confidentiality, the Committee's determinations would be subject to second-guessing by courts. In addition, the Committee would need to carefully review the underlying records and proceedings for privilege and apply any appropriate redactions. And it is likely that future complainants would challenge the Committee's determinations in federal court, similar to cases brought under the Freedom of Information Act. In addition, the Committee and the Second Department would need to revamp their recordkeeping practices and change how formal disciplinary proceedings are conducted to facilitate public access. But that is "exactly the sort of interference *O'Shea* seeks to avoid." *Disability Rts.*, 916 F.3d at 136.

Moreover, "abstention here is supported by the 'availability of other avenues of relief.'" *Disability Rts.*, 916 F.3d at 137 (quoting *O'Shea*, 414 U.S. at 504). Principles of comity and federalism require federal courts to consider the availability of an adequate state forum in deciding whether to abstain, and federal courts cannot presume that "state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431. Abstention is justified in this case because Plaintiff may assert her federal constitutional claim in New York state court and, if necessary, seek

review by the U.S. Supreme Court. *See Disability Rts.*, 916 F.3d at 137; *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 77 (2d Cir. 2003).

Accordingly, the Court should dismiss the Complaint on abstention grounds.[28]

### D.    The Complaint Fails to State a Plausible First Amendment Claim

As a general rule, there is no "First Amendment guarantee of a right of access to all sources of information within government control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978). The Supreme Court has determined, however, that there is a qualified right of access to certain criminal court proceedings, including criminal trials. *Globe Newspaper Co. v. Superior Ct. for Cnty. of Norfolk*, 457 U.S. 596, 603-06 (1982) (trials); *Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 505-13 (1984) (voir dire); *Press-Enterprise Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 13 (1986) (*Press-Enterprise II*) (preliminary hearings). The Second Circuit has extended a qualified right of access to civil trials and related proceedings and records, and to certain administrative proceedings. *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 298, 300-01 (2d Cir. 2012) ("*NYCLU*"); *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163-64 (2d Cir. 2013). By contrast, there is no right of access to grand jury matters, prosecutors' investigatory materials, cooperation agreements, or pretrial discovery, for example. *See, e.g.*, *Press-Enterprise II*, 478 U.S. at 9-10 (discussing grand-jury proceedings).[29]

To determine whether a qualified right of access attaches, courts ordinarily consider two factors: (1) "whether the place and process have historically been open to the . . . public," and (2)

---

[28]      Justice LaSalle's appellate brief in *CRC* further explains how the district court erred in determining that *O'Shea* abstention was inapplicable. *See* 2d Cir. ECF No. 25, at 45-50.

[29]      *See also United States v. Kincaide*, 119 F.4th 1074, 1078 (6th Cir. 2024) (cooperation agreements); *North Jersey Media Grp., Inc. v. United States*, 836 F.3d 421, 434 (3d Cir. 2016) (pretrial discovery); *In re Search of Fair Fin.*, 692 F.3d 424, 431 (6th Cir. 2012) (search warrant applications)*; In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 & n.4 (2d Cir. 2009) (wiretap applications); *Center for Nat'l Sec. Stud. v. United States Dep't of Just.*, 331 F.3d 918, 934, 936 (D.C. Cir. 2003) (investigatory documents).

"whether public access plays a significant positive role in the functioning of the particular process in question." *NYCLU*, 684 F.3d at 297 (quotation marks omitted). Together, these considerations are commonly referred to as the "experience-and-logic test." *Id.*

On the question of experience, courts consider whether the place and process were open at the time of the Founding and whether "the presumption of openness has remained secure" since that time. *Globe Newspaper Co.*, 457 U.S. at 605. A qualified right of access attaches, for example, where there exists an "unbroken, uncontradicted history" of openness. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality). In making this assessment, courts do "not look to the particular practice of any one jurisdiction, but instead to the experience in that *type* or *kind* of hearing throughout the United States." *El Vocero de P.R. (Carib- bean Int'l News Corp.) v. Puerto Rico*, 508 U.S. 147, 150 (1993) (quotation marks omitted). On the question of logic, courts consider "whether openness enhances the ability of the government proceeding to work properly and to fulfill its function." *NYCLU*, 684 F.3d at 302. "This inquiry requires an understanding of what the function of a particular process is and an evaluation of the role of openness in it." *Id.*

The threadbare allegations in the Complaint fall well short of stating a plausible First Amendment claim under the experience-and-logic test. Plaintiff merely proffers the conclusory assertion that "[m]ost attorney grievance procedures throughout the country do not require the same level of confidentiality" as § 90(10) and cites to three state-court decisions and one federal district court decision. ECF No. 13, at ¶¶ 38-39 & n.4-5. [30] Yet those decisions involved restrictions

---

[30] The Complaint cites to a 2015 report by the Commission on Statewide Attorney Discipline, but the cited portion of the report does not substantiate Plaintiff's allegation regarding attorney grievance procedures throughout the country. ECF No. 13 at ¶ 38, n. 4 (citing New York State Commission on Statewide Attorney Discipline, Final Report to Chief Judge Jonathan Lippman, 78-79, at http://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf

on the disclosure of information rather than public access to attorney disciplinary records deemed confidential, and thus had no occasion to apply the experience-and-logic test.

Rather than pleading "sufficient factual matter" to state a plausible First Amendment claim, *Iqbal*, 556 U.S. at 678, the Complaint instead piggybacks off the district court's decision in *CRC*. ECF No. 13, at ¶¶ 8, 40-44, 48-50. But the incorporation of the *CRC* decision does not suffice to satisfy Plaintiff's pleading burden under *Iqbal*. *See, e.g.*, *Sullo & Bobbitt, PLLC v. Abbott*, No. 3:11 Civ. 1926-D, 2012 WL 2796794, at *14 (N.D. Tex. July 10, 2012) (plaintiff "must plead sufficient facts to enable the court to draw the reasonable inference that each prong of the 'experience' and 'logic' test is satisfied"); *Briggman v. Burton*, No. 5:15 Civ. 76, 2016 WL 5462840, at *5 (W.D. Va. Sept. 27, 2016) (complaint failed to plausibly allege "that juvenile court proceedings have been historically open to the public").

Plaintiff is unable to state a plausible First Amendment claim in any case. The Committee is charged with an investigatory and prosecutorial function under New York state law, including the determination as to whether to authorize a formal proceeding. *See* 22 N.Y.C.R.R. § 691.4(b)(1); 22 N.Y.C.R.R. §§ 1240.4-1240.5. The documents prepared by the Committee as part of this function are not subject to any public right of access.

Moreover, there is no historical tradition of publishing all decisions of state authorities responsible for investigating alleged attorney misconduct. Rather, these investigatory authorities have long been authorized to maintain the confidentiality of their dispositions, similar to documents concerning alternatives to prosecution that are not filed with the court as well as grand jury materials. *See supra* at 5-7. Consistent with the ABA's approval of private discipline, this tradition of confidentiality has continued as many States centralized investigatory authority within their court systems, and the tradition continues today. *See supra* at 5-9. Declaring a public right of

access to the Committee's decisions and related documents would thus make New York a national outlier.

Plaintiff's demand that "any and all records and proceedings"[31] relating to Committee complaints be made public not only contravenes longstanding historical tradition in New York and throughout the country, but logic as well. Plaintiff's requested relief would effectively prohibit the use of private discipline by the Committee, even though the ABA's current model rules continue to provide for private discipline.[32] Indeed, confidentiality is critical to the rehabilitative goal of private discipline, and also protects the public by allowing the Committee to flag minor misconduct that might not otherwise warrant a formal disciplinary proceeding. *See McLaughlin v. Philadelphia Newspapers, Inc.*, 465 Pa. 104, 114-15 (1975). Opening these dispositions to the public does not enhance the disciplinary process, *see NYCLU*, 684 F.3d at 302, where the Committee has deliberately concluded that public discipline is inappropriate.

The publication of the Committee's dispositions, as well as making public the underlying materials, would also undermine the Committee's investigations. Prospective witnesses may be dissuaded from voluntarily coming forward during the investigatory process knowing that the Committee's dispositions will become public. *See Douglas Oil Co. v. Petrol Stops Nw.*, 411 U.S. 211, 219 (1979). The assurance of confidentiality also encourages witnesses to provide full and frank information to the Committee and its investigators. *Id.* In addition, publishing dispositions would risk disclosure of sensitive material. Together, these considerations far outweigh any purported need for greater public scrutiny, which could be said of "public access to *any*

---

[31]     The relief Plaintiff is requesting is even broader than the relief requested by the plaintiffs in *CRC*, and there is no basis to grant it. Indeed, even the *CRC* district court recognized that many aspects of the Committee's activities should not be subject to a public right of access. *See CRC*, 741 F. Supp. 3d at 168-69 (no public right of access to dispositions made by Chief Attorney).

[32]     *See* Model Rules for Lawyer Disciplinary Enf't r. 10(A)(5) (ABA July 20, 2020).

government affair." *North Jersey Media Grp. v. Ashcroft*, 308 F.3d 198, 217 (3d Cir. 2002) (emphasis in original). In addition, Plaintiff's demand for "all records" could also encompass documents related to the deliberative process as well as other types of sensitive material that are clearly protected from public access.[33]

Because the experience-and-logic analysis demonstrates the absence of any right of public access to the Committee's dispositions and underlying materials, the Court should dismiss Plaintiff's First Amendment claim with prejudice.

## CONCLUSION

For the reasons herein, Defendants respectfully request that this Court stay proceedings pending the Second Circuit's decision in *CRC* or, in the alternative, dismiss the Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
        May 19, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

By:

___*/s/Yuval Rubinstein*____
Yuval Rubinstein
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8673
yuval.rubinstein@ag.ny.gov

---

[33] The district court's determination in *CRC* of a qualified right of public access to the Committee's dispositions was erroneous for several reasons, including that the court overlooked historical evidence supporting the confidentiality of these materials and mistakenly determined that the Committee's work was adjudicatory rather than investigatory and prosecutorial in function. *See* 2d Cir. ECF No. 25, at 56-61. The district court further erred in determining that the Committee would function better with its dispositions made public. *Id.* at 62-66. The district court's First Amendment analysis is also distinguishable to the extent it factored prosecutorial misconduct, which is not at issue in this case.

## <u>CERTIFICATION</u>

      In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the Memorandum of Law in Support of Defendants' Motion to Stay Proceedings or, in the Alternative, to Dismiss the Complaint contains 7,979 words of the 8,750 limit, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

_____/s/_____
Yuval Rubinstein
