UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICHOLE BEINER,

                    Plaintiff,

        -against-

ANGÉLICQUE M. MORENO, Chair of the
State of New York Grievance Committee for
the Second, Eleventh, and Thirteenth Judicial
Districts, in her official capacity; DAVID W.
CHANDLER, Chief Attorney of the State of
New York Grievance Committee for the
Second, Eleventh, and Thirteenth Judicial
Districts, in his official capacity; and HECTOR
D. LaSALLE, Presiding Justice of the Second
Judicial Department of the Appellate Division
of the Supreme Court of the State of New York,
in his official capacity,

                    Defendants.

Civil Action No. 24 Civ. 08600

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY
PROCEEDINGS OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ........................................................................................................ii-iv

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................................2

ARGUMENT ...................................................................................................................................4

I.      THE EXTRAORDINARY REMEDY OF A STAY IS NOT
WARRANTED HERE.........................................................................................................4

          A.     Ms. Beiner Would Be Severely Prejudiced by a Stay ..................................5

          B.     Defendants Will Not Be Prejudiced Without a Stay.....................................6

          C.     The Court Has an Interest in Preventing the Undue Delay Caused
by a Stay......................................................................................................8

          D.     The Public and Third Parties Have a Strong Interest in the Speedy
Adjudication of the Constitutional Issues in this Case .............................10

II.     THE COURT SHOULD NOT DISMISS MS. BEINER'S CASE ........................10

          A.     Defendants Improperly Inserted New Facts Into This Motion ..................10

          B.     Ms. Beiner's Claims are Ripe ...................................................................12

                1.     Ms. Beiner's Claims Became Constitutionally Ripe When
the Grievance Committee Refused Her Request to Access
its Record. ......................................................................................12

                2.     Ms. Beiner's Claims are Prudentially Ripe Because the
Grievance Committee Refused Her Request to Access
its Record. ......................................................................................13

          A.     Abstention is Not Proper in this Constitutional Case ................................14

          B.     Ms. Beiner Has Adequately Stated a Claim...............................................17

CONCLUSION...............................................................................................................188

**Cases**

*Anonymous J. v. Bar Ass'n of Erie Cnty.*,
515 F.2d 435 (2d Cir. 1975)..................................................... 16

*Aretakis*,
16 A.D.3d 899 (3rd Dep't 2005) ............................................... 12

*Califano v. Roman Cath. Diocese of Rockville Ctr.*,
No. 24 Civ. 4346, 2024 WL 4276170 (E.D.N.Y. Sept. 24, 2024).................................... 17

*Capoccia*,
59 N.Y.2d 549 (3rd Dep't 1983) ............................................... 12

*Civ. Rts Corps v. Pestana*,
No. 21 Civ. 9128 (VM), 2022 WL 1422852 (S.D.N.Y. May 5, 2022).................. 3, 14, 15

*Civ. Rts. Corps v. LaSalle*,
741 F. Supp. 3d 112 (S.D.N.Y. 2024)...................................... passim

*Civ. Rts. Corps v. Pestana*,
No. 21 Civ. 9128 (VM), 2022 WL 2118191 (S.D.N.Y. June 13, 2022)...................... 3, 13

*Civ. Rts. Corps v. Pestana*,
No. 21 Civ. 9128 (VM), 2022 WL 220020 (S.D.N.Y. Jan. 25, 2022)......................... 3, 13

*Civ. Rts. Corps v. Pestana*,
No. 21 CIV. 9128 (VM), 2022 WL 3445729 (S.D.N.Y. Aug. 17, 2022) .......................... 3

*Civil Rights Corps v. LaSalle*,
741 F. Supp. 3d 112 (S.D.N.Y. July 22, 2024)...................................... passim

*Collins v. Miller*,
338 F. App'x. 34 (2d Cir. 2009) ............................................... 17

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) ............................................... 17

*Courthouse News Service v. Corsones*,
131 F.4th 59 (2d Cir. 2025) .................................. 8, 9, 14, 16

*Disability Rts. New York v. New York*,
916 F.3d 129 (2d Cir. 2019)................................................. 14, 15

*Doe v. Sarah Lawrence Coll.*,
453 F. Supp. 3d 653 (S.D.N.Y. 2020)......................................... 10

*Elrod v. Burns,*
    427 U.S. 347 (1976)............................................................................... 6

*Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.,*
    No. 19 Civ 5394, 2025 WL 622546 (E.D.N.Y. Feb. 26, 2025)........................ 4

*Hirschfeld v. Bd. of Elections in City of New York,*
    984 F.2d 35 (2d Cir. 1993)...................................................................... 8

*Kaufman v. Kaye,*
    466 F.3d 83 (2d Cir. 2006)................................................................ 14, 15

*Mangiafico v. Blumenthal,*
    471 F.3d 391 (2d Cir. 2006)..................................................................... 7

*Marbury v. Madison,*
    5 U.S. 137 (1803)................................................................................ 14

*McCabe v. Caribbean Cruise Line, Inc.,*
    No. 13 Civ. 6131, 2014 WL 3014874 (E.D.N.Y. July 3, 2014) ...................... 5

*McCrary v. Marks,*
    836 F. App'x 73 (2d Cir. 2021)............................................................... 17

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982)............................................................................. 15

*Nat'l Org. for Marriage, Inc. v. Walsh,*
    714 F.3d 682 (2d Cir. 2013)................................................................... 13

*Nat'l Park Hosp. Ass'n. v. Dep. Of Interior,*
    538 U.S. 803 (2003)............................................................................. 12

*New York C.L. Union v. New York City Transit Auth.,*
    684 F.3d 286 (2d Cir. 2012).................................................................... 6

*New York News,*
    113 A.D.2d 92 (1st Dep't 1985).............................................................. 12

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)................................................................. 1, 9, 14, 15

*Powell v. Ward,*
    643 F.2d 924 (2d Cir. 1981)..................................................................... 9

*Rankine v. Levi Strauss & Co.,*
    674 F. Supp. 3d 57 (S.D.N.Y. 2023)................................................... 4, 6, 8

*Spargo v. New York State Comm'n on Jud. Conduct*,
　　351 F.3d 65 (2d Cir. 2003) .............................................................................. 16

*Torres v. Faxton St. Lukes Healthcare*,
　　No. 16 Civ. -439, 2017 WL 11317906 (N.D.N.Y. Jan. 26, 2017) ................................... 10

*United States v. Town of Oyster Bay*,
　　66 F. Supp. 3d 285 (E.D.N.Y. 2014) .............................................................. 9

*Verizon New York Inc. v. Vill. of Westhampton Beach*,
　　No. Civ. 11-213, 2013 WL 5762926 (E.D.N.Y. Oct. 18, 2013) ..................................... 6, 8

*Worldcom. Inc. Sec. Litig.*,
　　No. 2 Civ. 3288 (DLC), 2004 WL 802414 (S.D.N.Y. Apr. 15, 2004) .............................. 5

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 4

New York Judiciary Law § 90 ............................................................................. passim

**Other Authorities**

Adult Survivors Act, N.Y.S. Bill No. 648A, 2021-2022 Leg., Reg. Sess. (N.Y. 2022) ................. 6

New York State Commission on Statewide Attorney Discipline, Final Report to Chief Judge
　　Jonathan Lippman, the Court of Appeals, and the Administrative Board of the Courts
　　(September 24, 2015) 62-64, available at
　　http://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-
　　1.pdf ................................................................................................. 11

*Victim Responses to Sexual Assault: Counterintuitive or Simply Adaptive*, Nat'l Dist. Attorneys
　　Ass'n (2007) https://www.nsvrc.org/sites/default/files/publications/2018-
　　10/pub_victim_responses_sexual_assault.pdf .......................................................... 5

**Rules**

22 N.Y.C.R.R. § 1240.18 ...................................................................................... 12

Plaintiff Nichole Beiner submits this memorandum of law in opposition to Defendants' motion to stay proceedings or, in the alternative, dismiss the complaint.

## PRELIMINARY STATEMENT

There is no basis for a stay in this case. The interests of the Plaintiff, the Court, the public, and third-parties all weigh in favor of allowing this case to proceed in order to remedy a continuing constitutional violation as quickly as possible. Defendants have not demonstrated that they would be prejudiced absent a stay, especially since this case is projected to involve little to no discovery. Defendants have not and cannot show their appeal in *Civil Rights Corps.* is likely to succeed. In any event, Defendants do not agree that that appeal would have preclusive effect in this case, so this case will go forward regardless of the outcome of the appeal. All factors weigh heavily against a stay.

The Court should also deny Defendants' motion to dismiss. First, Ms. Beiner's claim became ripe the moment that the Committee denied her request to access its documents; any attempt to file a good-cause application would have been futile as demonstrated by the Committee's long-standing practice of denying good-cause applications by members of the public. Second, the *O'Shea* abstention doctrine does not apply to this case. Ms. Beiner seeks to vindicate her constitutional rights—a duty that has been entrusted to federal courts since the early days of our nation. She does not ask the Court to insert itself into the attorney grievance process and require the creation of new processes or procedures.

Finally, Ms. Beiner has adequately stated a claim upon which relief can be granted. In her complaint, Ms. Beiner alleged that she requested access to the documents created and relied upon during the Committee's adjudicatory process and that the Committee denied her access to said documents. That is all that is required to plead a First Amendment right of access claim.

The Court should deny Defendants' motion in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

While she was a law student, Plaintiff Nichole Beiner was repeatedly sexually assaulted and sexually harassed by her then-professor Tracey Maclin. *See* Complaint, ECF No. 13 ("Compl."), ¶ 1. After Ms. Beiner complained of Professor Maclin's misconduct, her former law school hired an independent law firm to investigate her allegations. *Id*. ¶ 17. After a thorough investigation consisting of multiple witness interviews and the review of contemporaneous documentary evidence, the law firm substantiated Ms. Beiner's complaint, finding that "Professor Maclin[] had unwanted physical contact of a sexual nature with Ms. Beiner by… causing her to perform sexual acts on him without her consent." *Id.* ¶¶ 19-20. The report also substantiated another student's allegations of sexual misconduct against Professor Maclin. *Id*. ¶ 19. Soon after the release of this report, Professor Maclin resigned from his position. *Id*. ¶ 22. He is currently employed in a student-facing role at the University of Florida's Levin College of Law. *Id.*

On April 11, 2023, Ms. Beiner submitted a formal complaint (the "Complaint") against Professor Maclin to the New York State Attorney Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee" or "Committee"), where Professor Maclin is barred, alleging that Professor Maclin violated N.Y. Rules of Professional Conduct 8.4(b), (c), and (h). *Id*. ¶¶ 23-24. The Grievance Committee initially dismissed the Complaint on the grounds that it was appropriate for criminal, but not grievance, discipline. *Id*. ¶¶ 5, 25. After Ms. Beiner moved for reconsideration, the Grievance Committee reluctantly opened an investigation. *Id*. ¶¶ 25-26. But then the Grievance Committee conducted no meaningful inquiry into Ms. Beiner's Complaint, including never even interviewing her. *Id*. ¶¶ 27-29.

On July 25, 2024, the Grievance Committee notified Ms. Beiner that (a) they had found that Professor Maclin violated the Rules of Professional Conduct, and (b) the Committee had issued a letter of admonition—a form of private discipline levied against attorneys whose conduct is not sufficiently serious to warrant the commencement of a formal disciplinary proceeding—to Professor Maclin for said misconduct. *Id*. ¶¶ 30-31.

Struggling to understand the Committee's reasoning behind this disposition, Ms. Beiner formally requested that the Committee provide her with a copy of the letter of admonition and "all materials considered and created during the course of the Committee's investigation into Professor Maclin's misconduct." *Id*. ¶¶ 32-33. In this request, Ms. Beiner cited a recent decision from Judge Marrero in the Southern District of New York in *Civil Rights Corps v. LaSalle*, which held that a presumptive right of access under the First Amendment applied to dispositions made by the Grievance Committee, all disciplinary hearings in the Second Judicial Department, and all documents necessary to understand those hearings. 741 F. Supp. 3d 112, 172 (S.D.N.Y. July 22, 2024).

*Civil Rights Corps* is a highly analogous case in which several grievance complainants alleged that New York Judiciary Law § 90(10) violated the right of public access enshrined in the First Amendment of the U.S. Constitution. *Id.* at 127. Judge Marrero issued several opinions discussing the same issues that Defendants raise in this brief.[1] The case is currently on appeal before the Second Circuit Court of Appeals.

---

[1] *See, e.g.*, *Civ. Rts. Corps v. Pestana*, No. 21 Civ. 9128 (VM), 2022 WL 220020 (S.D.N.Y. Jan. 25, 2022) [hereinafter *CRC I*]; *Civ. Rts Corps v. Pestana*, No. 21 Civ. 9128 (VM), 2022 WL 1422852 (S.D.N.Y. May 5, 2022) [hereinafter *CRC II*]; *Civ. Rts. Corps v. Pestana*, No. 21 Civ. 9128 (VM), 2022 WL 2118191 (S.D.N.Y. June 13, 2022) [hereinafter *CRC III*]; *Civ. Rts. Corps v. Pestana*, No. 21 CIV. 9128 (VM), 2022 WL 3445729 (S.D.N.Y. Aug. 17, 2022) [hereinafter *CRC IV*]; *Civ. Rts. Corps v. LaSalle*, 741 F. Supp. 3d 112 (S.D.N.Y. 2024) [hereinafter *CRC V*].

Despite Judge Marrero's ruling in *Civil Rights Corps*, and despite the fact that the Committee never sought a stay of the enforcement of Judge Marrero's ruling, the Committee refused to provide Ms. Beiner with its decision or other documents. Compl. at ¶ 34.

Ms. Beiner then brought this as-applied constitutional challenge to the Committee's violation of her First Amendment right to access pursuant to 42 U.S.C. § 1983. *Id.* at ¶ 55. On May 19, 2025, Defendants moved this court to (1) stay proceedings pending the Second Circuit's ruling in *Civil Rights Corps*; and, in the alternative, (2) to dismiss Ms. Beiner's complaint. *See* Def. Br. at 1-2.

## ARGUMENT

A stay is not warranted in this case, given the strong interest Ms. Beiner, the Court, third-parties, and the public share in vindicating Ms. Beiner's First Amendment right to see the decision disciplining the law professor who sexually assaulted her. *See* Section I *infra*. This case is ripe, abstention is not appropriate, and Plaintiff has clearly stated a claim. *See* Section II *infra*. The Court should deny Defendants' motion in its entirety.

## I.     THE EXTRAORDINARY REMEDY OF A STAY IS NOT WARRANTED HERE

To meet their burden of proof that a stay is warranted, Defendants must establish "a clear case of hardship or inequity in being required to go forward." *See Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, No. 19 Civ. 5394, 2025 WL 622546, at *6 (E.D.N.Y. Feb. 26, 2025).[2] Defendants cannot establish any hardship or inequity absent a stay.

The five factors courts consider in determining whether a stay of proceedings is warranted also weigh against Defendants here. *See Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023). These factors examine the interest, burdens, and potential prejudice

---

[2] All citations in this brief have been "cleaned up" unless otherwise noted.

to (1) the plaintiff; (2) the defendants; (3) the courts; (4) third-parties; and (5) the public. *See id.*;

*see also McCabe v. Caribbean Cruise Line, Inc*., No. 13 Civ. 6131, 2014 WL 3014874, at *5

(E.D.N.Y. July 3, 2014). All five factors weigh firmly in favor of allowing Ms. Beiner's case to

proceed as expeditiously as possible without the delay of a stay based on a frivolous appeal that

(a) Defendants have not demonstrated is likely to prevail, and (b) both parties argue is

distinguishable in the event that the Second Circuit does not rule in their respective favors.

### A.  Ms. Beiner Would Be Severely Prejudiced by a Stay

Ms. Beiner has an undisputable interest in the "speedy resolution" of her case. *See In re*

*Worldcom. Inc. Sec. Litig*., No. 2 Civ. 3288 (DLC), 2004 WL 802414, *5 (S.D.N.Y. Apr. 15,

2004). Any delay in her case would be prejudicial on that basis alone. The prejudice is

compounded by the traumatic circumstances underlying this case and the continued violation of

Ms. Beiner's First Amendment rights.

*First*, the need to proceed as expeditiously as possible in this case is compounded by the

facts underlying this case. Ms. Beiner was subjected to a campaign of sexual assault and

harassment at the hands of *her professor*. *See* Compl. ¶ 1. While there was a gap in time between

Ms. Beiner's sexual victimization and her decision to speak out against Professor Maclin, this is

a common response for many survivors of sexual violence.[3] It is illogical to suggest that because

it took time for Ms. Beiner to come to terms with her abuse, develop the emotional strength to

formally complain about Professor Maclin, and overcome her fear of retaliation, she should be

forced to wait even longer for her case to reach a resolution. *Contra* Def. Br. at 12-13. If

anything, the fact that Ms. Beiner has struggled for so long to be able to hold Professor Maclin

accountable weighs against a stay to prevent any further delay in Ms. Beiner's pursuit of justice.

---

[3] *See, e.g., Victim Responses to Sexual Assault: Counterintuitive or Simply Adaptive*, Nat'l Dist. Attorneys Ass'n
(2007) https://www.nsvrc.org/sites/default/files/publications/2018-10/pub_victim_responses_sexual_assault.pdf.

*See generally* Adult Survivors Act, N.Y.S. Bill No. 648A, 2021-2022 Leg., Reg. Sess. (N.Y. 2022) (re-opening the statute of limitations and creating trial preference for adult survivors of sexual abuse).

*Second*, the prejudice here is far greater than a typical case because Ms. Beiner seeks injunctive and declaratory relief for the violation of her First Amendment rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms… unquestionably constitutes irreparable injury."). Defendants' refusal to provide Ms. Beiner with the requested documents constitutes a continuing violation of her constitutional rights. *See New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 305 (2d Cir. 2012) (concluding refusal to allow access to administrative proceedings caused plaintiff "irreparabl[e] harm[] through the continued violation of" their First Amendment right of access). Every day that Ms. Beiner is denied access to the requested documents is another day that her irreparable constitutional injury is further compounded. This Court should not allow Defendants to further injure Ms. Beiner by staying the proceedings of her case. *See Verizon New York Inc. v. Vill. of Westhampton Beach*, No. Civ. 11-213, 2013 WL 5762926, at *9 (E.D.N.Y. Oct. 18, 2013) (denying stay pending interlocutory appeal in part due to "the alleged [First Amendment] violation at issue… as well as the ongoing nature of the alleged violation").

### B. Defendants Will Not Be Prejudiced Without a Stay

Other than conclusory, boilerplate assertions, Defendants have not demonstrated that they would be prejudiced without a stay. *See Rankine*, 674 F. Supp. 3d at 69. In allocating just two sentences to this argument, Defendants state that "it is wholly unnecessary for the parties to expend time and resources briefing the very same legal issues pertaining to ripeness, abstention and First Amendment challenges to § 90(10) that are pending decision before the Second Circuit." Def. Br. at 14. But that argument fails because the appeal will not resolve the issues in

this case and because the parties have already expended the time and resources to brief these issues in this case.

*First*, the Second Circuit's decision in *Civil Rights Corps* will *not* resolve the issues in this case. *Contra* Def. Br. at 14. Defendants have already stated they intend to distinguish this case from *Civil Rights Corps*. In the Committee's denial of Ms. Beiner's request for documents, the Committee stated "[t]he materials [Ms. Beiner] requested were not included in the declaratory relief issues under *Civil Rights Corps*[.]" *See* Salzman Decl., Ex. 1.[4] This makes it clear that Defendants will still litigate this case even if they lose in the Second Circuit. This severely undercuts their assertion as to the conclusive nature of the *Civil Rights Corps* appeal.

In addition, Ms. Beiner has a much stronger First Amendment claim than the *Civil Rights Corps* plaintiffs. The plaintiffs in *Civil Rights Corps* were never officially complainants in the attorney grievance process and never received a formal denial of a request for records. *See CRC V* at 134. By contrast, Ms. Beiner was the actual complainant against Professor Maclin and, after submitting a formal request to access the Committee's records, received a formal denial. *See* Compl. ¶¶ 32-34. Consequently, in the unlikely event that the Second Circuit overrules Judge Marrero's decision in *Civil Rights Corps*, Ms. Beiner will still be able to proceed with this case, based on her grounds to challenge the constitutionality of § 90(10) as applied to her factual circumstances. This case will go forward regardless of the outcome of the *Civil Rights Corps* appeal.

*Second*, Defendants have already expended the very resources they claim they seek to preserve by choosing to  bring a motion to dismiss and brief arguments on ripeness, abstention,

---

[4] The Committee's denial is properly considered at this stage of litigation because (a) it was incorporated by reference in the complaint, and (b) the complaint relies heavily on the effect it had in violating Ms. Beiner's First Amendment right. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)

and First Amendment challenges to § 90(10). Defendants cannot claim to be prejudiced by actions they have already voluntarily undertaken. Because this case will probably not require any discovery, briefing and deciding these legal issues is the only work the parties and the Court need to undertake to resolve it. Courts deny stays even when discovery is required. *See Rankine*, 674 F. Supp. 3d at 69 ("[T]he Court is not persuaded that being required to engage in discovery would be unduly burdensome to Defendant, or that any prejudice to Defendant would outweigh the prejudice to Plaintiff caused by a delay in proceedings."). Here, without the burdens associated with discovery, and having already voluntarily undertaken the work associated with the legal briefing required to decide these issues, Defendants are certainly not entitled to a stay.

### C.     The Court Has an Interest in Preventing the Undue Delay Caused by a Stay

It is in the Court's interest to allow this case to proceed without a stay because a decision in the *Civil Rights Corps* appeal will not immediately end all litigation in this case.

*First*, Defendants have not demonstrated that they are likely to succeed on their appeal to the Second Circuit. Following Judge Marrero's decision in *Civil Rights Corps*, Defendants did not seek a stay of the enforcement of the decision—because they cannot show the likelihood of success required for such a stay. *See generally Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993); *Verizon New York Inc.*, 2013 WL 5762926 at *3 ("Whether [moving party] has made a strong showing that it is likely to succeed on the merits of its appeal is one of the most critical factors for the Court to consider."). Even now, when given another opportunity to impress upon the Court that they will succeed on appeal, Defendants tellingly still fail to do so. They do not even *attempt* to make that showing.

Additionally, the Second Circuit's recent holding in *Courthouse News Service v. Corsones* affirmatively demonstrates that Defendants are likely to lose their pending appeal. 131 F.4th 59 (2d Cir. 2025). There, plaintiffs claimed that the Vermont Superior Court violated their

First Amendment right to access judicial documents by delaying access to newly-filed complaints. *Id.* at 63. The Second Circuit affirmed the district court's finding that this practice violated plaintiff's First Amendment right to access judicial documents. *Id.* At the same time, the Second Circuit dismissed defendants' abstention arguments, holding that the relief sought by the complaint "did not unreasonably intrude upon the Vermont judiciary's autonomy or risk the sort of monitoring of the operation of state court functions that *O'Shea* prohibits." *Id.* at 77-78. The Second Circuit's refusal to abstain from deciding *Corsones* makes it clear that Defendants will not prevail on their abstention argument in their appeal in *Civil Rights Corps*, and the Second Circuit's recognition that a brief delay in access to judicial document constitutes a First Amendment violation also supports the notion that Defendants will not prevail on their merits argument either.

Because Defendants did not seek a stay of the enforcement of Judge Marrero's holding, they are required to follow it. *See generally Powell v. Ward*, 643 F.2d 924, 932 (2d Cir. 1981) (affirming contempt finding when defendants failed to comply with court order). Judge Marrero's holding was careful, thorough, and well-reasoned, and Defendants' motion fails to identify any caselaw or argument suggesting it is likely to be overturned. As a result, a stay will only delay the inevitable progression of this case.

*Second*, because a Second Circuit ruling in *Civil Rights Corps* would not dispose of the main issues of litigation, *supra* I.B, it is in the Court's interest to proceed with the litigation of this case rather than stay the proceedings only to inevitably have to restart them after a lengthy delay. *See United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 290 (E.D.N.Y. 2014) ("[W]here… an appellate court decision would not dispose of the main issues in the litigation,

courts have found considerations of fairness and efficiency to weigh in favor of denying a stay of the proceedings pending the decision.").

**D.    The Public and Third Parties Have a Strong Interest in the Speedy Adjudication of the Constitutional Issues in this Case**

Just as it is in Ms. Beiner's interest to have the issue of her constitutional violation decided as soon as possible, it is also in the interest of the public at large and other third-party complainants in the grievance process to have the Committee comply with the First Amendment without delay. "[T]he public interest disfavors the grant of a stay where it would hinder the speedy adjudication of constitutional claims." *Torres v. Faxton St. Lukes Healthcare*, No. 16 Civ. 439, 2017 WL 11317906, at *3 (N.D.N.Y. Jan. 26, 2017). The Committee's disregard for Judge Marrero's ruling indicates that they will continue to violate the First Amendment by withholding these judicial documents from other complainants and members of the public. The risk of irreparable harm to third-parties and the public by the Committee's continued contempt supports a denial of a stay.

**II.    THE COURT SHOULD NOT DISMISS MS. BEINER'S CASE**

**A.    Defendants Improperly Inserted New Facts Into This Motion**

As a preliminary matter, Defendants' discussion of the history of attorney discipline is improper and must be disregarded in this motion. *See* Def. Br. at 5-11, 23-25. Defendants cannot assert new facts in a motion to dismiss. *See Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 665 (S.D.N.Y. 2020) (refusing to consider new facts and evidence introduced by defendants on a motion to dismiss). If Defendant wanted to dispute the facts, they had to file an answer and then a subsequent motion on the pleadings. Having made the decision to move to dismiss, Defendants have forfeited the right to offer the Court their version of the facts at this stage of litigation and

cannot argue the merits of the First Amendment right to access to dispositions made by the Attorney Grievance Committee. The Court should disregard those sections of Defendants' brief.

In any event, Defendants mischaracterize the history. As alleged in the complaint here (allegations which the Court must accept as true on this motion to dismiss): "In New York, attorney disciplinary complaints were historically heard in a public forum: 'The record is clear that by the late nineteenth and early twentieth centuries, attorney disbarment proceedings were public affairs.'" Compl. ¶ 50 (quoting *CRC V* at 158). Attorney grievance proceedings were historically treated the same as "ordinary civil litigation of [its] day.*" CRC V* at 157. There was a complaint, an aggrieved party, witness testimony and other evidence, culminating in findings of fact and conclusions of law issued by an adjudicator proceeding over the case. *See id.* Since moving to a confidential system in 1945, New York has become a national outlier in terms of the mandated confidentiality surrounding their attorney grievance process. *Id.* at 158. As alleged in Ms. Beiner's complaint: "Most attorney grievance procedures throughout the country do not require the same level of confidentiality that is required by New York Judicial Law § 90(10). Such jurisdictions allow open proceedings following a finding of 'probable cause' by an authorized Bar Committee." Compl. ¶ 38.[5]. The complaint further pled that: "Many courts in other jurisdictions have found that overbroad confidentiality rules for attorney disciplinary processes violate the First Amendment." *Id.* ¶ 39 & n.5 (collecting cases).

---

[5] Defendants claim that the "cited portion" 2015 report from the Commission on Statewide Attorney Discipline "does not substantiate Plaintiff's allegation regarding attorney grievance procedures throughout the country." *See* Def. Br. at 22, n. 30. This is because of an error in the pincite, not because the citation generally does not support Plaintiff's allegation. The citation with the corrected pincite is as follows: New York State Commission on Statewide Attorney Discipline, Final Report to Chief Judge Jonathan Lippman, the Court of Appeals, and the Administrative Board of the Courts (September 24, 2015) 62-64, available at http://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf.

### B. Ms. Beiner's Claims are Ripe

Ms. Beiner's claims are both constitutionally and prudentially ripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *CRC V* at 141 (quoting *Nat'l Park Hosp. Ass'n. v. Dep. Of Interior*, 538 U.S. 803, 808 (2003)).

### 1. Ms. Beiner's Claims Became Constitutionally Ripe When the Grievance Committee Refused Her Request to Access its Record

Defendants are flat wrong to claim that "no government entity has denied Plaintiff public access to the information she seeks." Def. Br. at 17. On August 12, 2024, after receiving news of the Committee's private admonition against Professor Maclin, Ms. Beiner wrote to the Committee requesting to see the Committee's decision and other documents regarding her complaint. *See* Compl. ¶ 33. The Committee responded and refused to provide Ms. Beiner with the requested documents. *See id.* ¶ 34. This refusal constitutes a government denial from in violation of Ms. Beiner's First Amendment rights.

Defendants are also wrong that Ms. Beiner had to file a "good-cause application" pursuant to 22 N.Y.C.R.R. § 1240.18(d). *Contra* Def. Br. at 17. A plaintiff need not exhaust state law remedies before filing a Section 1983 case like this one. *See CRC V* at 142 (collecting cases). Additionally, any attempt by Ms. Beiner to pursue a good-cause application would have been futile. As aptly observed by Judge Marrero in rejecting this same argument, "only three Good Cause Applications by the general public have been granted since 1945 in any Appellate Division." *See id.* (citing *In re Aretakis*, 16 A.D.3d 899 (3rd Dep't 2005); *In re New York News*, 113 A.D.2d 92 (1st Dep't 1985); *In re Capoccia*, 59 N.Y.2d 549 (3rd Dep't 1983)).

Further, even though Judge Marrero correctly found that the *Civil Rights Corps*' case was ripe, the ripeness of Ms. Beiner's case is even stronger than in *Civil Rights Corps*. There, while

the plaintiffs had a "real and imminent fear that their First Amendment rights would continue to be chilled," they never sent an official request to access the records and the Committee never sent an official denial. *CRC III* at \*5 (S.D.N.Y. June 13, 2022). By contrast, here, Ms. Beiner's receipt of an official denial undoubtably constitutes an injury making her case ripe for review. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013).

### 2. Ms. Beiner's Claims are Prudentially Ripe Because the Grievance Committee Refused Her Request to Access its Record

"Prudential ripeness asks whether the issues are fit for judicial decision and what hardship withholding consideration would bring to the parties." *CRC III* at \*4 (citing *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d at 691. An examination into the fitness of a judicial decision looks at "whether the issues sought to be adjudicated are contingent on future events or may never occur," while hardship depends on "whether the challenged action creates a direct and immediate dilemma for the parties." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 691.

Ms. Beiner's case is "fit for judicial decision" and she will experience hardship if the case is not adjudicated at this juncture. *See id*. First, no part of Ms. Beiner's case is contingent on future events as the grievance proceedings against Professor Maclin have ended and Ms. Beiner has already been affirmatively denied access to the Committee's documents. *See* Compl. ¶¶ 30, 34. Consequently, Ms. Beiner's case satisfies the fitness requirement. Second, as discussed in Section I.A *supra*, the Committee is inflicting a continuing constitutional violation against Ms. Beiner by continuing to deny her access to its decision and records. As a result, a decision not to adjudicate Ms. Beiner's case would cause her constitutional injuries to continue to compound. This creates "a direct and immediate" harm for Ms. Beiner, thereby satisfying the hardship requirement. *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 691.

**A.** **Abstention is Not Proper in this Constitutional Case**

The Court should also deny Defendants' anticipated motion to dismiss on abstention grounds, just as Judge Marrero did. The *O'Shea* abstention doctrine "is very different from what Plaintiff[ is] seeking in the case now before the Court." *CRC II* at * 6; *see also Corsones*, 131 F.4th at 77 ("[T]he remedy sought by Plaintiffs is a bright-line rule invalidating the Superior Court's pre-access review process as in violation of Plaintiffs' First Amendment rights… [rather] than an ongoing monitoring of the substance of state proceedings."). Ms. Beiner asks "the Court to determine the constitutionality of a state statute, not to oversee internal judicial procedures or ongoing proceedings." *CRC II* at * 6 (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). As Judge Marrero emphasized, "[d]etermining the constitutionality of a state statute is… 'emphatically the province and duty of the judicial department.'" *Id.* Just so here. *See Corsones*, 131 F.4th at 77 ("The mere possibility that a finding of unconstitutionality of the originally challenged State procedure may be followed by a further challenge to the subsequently developed, ameliorative State procedure does not make it an ongoing federal audit of State procedures. If it did, it would mean that federal courts could rarely consider constitutional challenges to State procedures.").

Just as in *Civil Rights Corps.*, the relief sought by Ms. Beiner differs drastically from the relief sought in *O'Shea*, *Kaufman, and Disability Rights New York*. *See O'Shea v. Littleton*, 414 U.S. 488, 500-501 (1974); *see also Disability Rts. New York v. New York*, 916 F.3d 129 (2d Cir. 2019); *Kaufman v. Kaye*, 466 F.3d 83, 86-87 (2d Cir. 2006). In *O'Shea*, the plaintiffs sought an injunction preventing defendants from: (1) setting bond in criminal cases according to an unofficial bond schedule; (2) imposing harsher punishments; or (3) requiring plaintiffs to pay for a trial by jury when charged with violations of city ordinances. *See O'Shea*, 414 U.S. at 491. In short, the plaintiffs were seeking "an injunction aimed at controlling or preventing the

occurrence of specific events that might take place in the court of future state criminal trials." *See id.* at 500. The relief sought by Ms. Beiner is markedly different: she seeks a ruling that a state statute is unconstitutional as applied to her—as Judge Marrero found, exactly the kind of claim federal courts routinely adjudicate. *CRC II* at * 6. By contrast, in *O'Shea*, the Court expressly noted that the plaintiffs did not "seek to strike down a single state statute, either on its face or as applied[,]" making it clear that, had plaintiffs sought that relief, abstention would not have been appropriate. *See id.* at 500; *see also Kaufman*, 466 F.3d at 85 (upholding abstention-based dismissal when plaintiff sought "an injunction requiring the New York state legislature to establish a new system of assigning appeals in the Second Department" and "vacatur of a number of Second Department decisions adverse to Kaufman"); *Disability Rts. New York*, 916 F.3d at 130–31 (holding abstention was appropriate when plaintiffs sought "injunctive relief to compel defendants-appellees…to alter the manner in which guardianship proceedings are conducted").

Similarly, Defendants' three cases involving attorney disciplinary proceedings and abstention doctrines are easily distinguishable. *See* Def. Br. at 19. First, all these cases analyzed the *Younger* abstention doctrine, which Defendants do not even suggest applies here. The *Younger* abstention doctrine is limited to cases in which there is an on-going state proceeding in process, *O'Shea*, 414 U.S. at 500, but there is no dispute here that the Committee has completed its investigation into Professor Maclin. Compl. ¶ 30. Second, in Defendants' cases, the plaintiffs sought to enjoin the state disciplinary process from proceeding—but here, the process is complete and Ms. Beiner seeks to challenge the constitutionality of the state law invoked by the Committee to deny her access to the decision. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 429 (1982) (noting how plaintiff brought suit instead of filing an

answer to the misconduct complaint levied against him); *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65 (2d Cir. 2003) (involving plaintiff seeking injunction preventing judicial ethics commission from charging him with five counts of judicial misconduct); *Anonymous J. v. Bar Ass'n of Erie Cnty.*, 515 F.2d 435, 436 (2d Cir. 1975) ("[T]he appellants commenced an action… seeking preliminary and permanent injunctive relief enjoining the defendants from pursuing the disciplinary proceedings."). Unlike in those cases, the grievance proceedings against Professor Maclin have closed and the Committee has issued a disposition. Ms. Beiner is not asking for this Court to reopen the proceedings or change the Committee's disposition. Defendants' cases are inapposite here.

Defendants allege that they would have to make a number of changes to the current structure of attorney grievance proceedings in order to better facilitate public access. *See* Def. Br. at 20. First, those facts are not pled in the complaint and not properly before the Court on this motion to dismiss. *Supra* Section II.A. But in any event Ms. Beiner is seeking only a declaration that the state law, as applied to her, is unconstitutional and injunctive relief only as it pertains to her request for documents related to her Complaint. She does not ask the Court to order Defendants to enact any changes, to change how it conducts investigations and levies discipline, or to otherwise have a federal court "legislate and engraft new procedures" upon the attorney grievance process. *Contra* Def. Br. at 2. Ms. Beiner asks this Court only to vindicate her rights under the First Amendment to access the Committee's decision and file. This Court should not abstain from deciding Ms. Beiner's constitutional case because of the "mere possibility" that the Court's ruling may lead Defendants to later make changes to some procedures. *Corsones*, 131 F.4th at 77; s*ee CRC V* at 148-49 ("Assuming the Court rules against the State on Plaintiffs' constitutional claims, the procedural mechanism by which the State complies with the

Constitution is not material." (citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 791 (9th Cir. 2014))).

### B.     Ms. Beiner Has Adequately Stated a Claim

Ms. Beiner has clearly stated a claim. In order to plead a First Amendment right to access claim, a plaintiff need only allege that she sought documents and that the government denied her access to those documents. *See Collins v. Miller*, 338 F. App'x. 34, 36 (2d Cir. 2009) (dismissing claim because plaintiff failed to allege that he requested access to his desired documents and failed to allege that the court denied him access to those documents); *see also McCrary v. Marks*, 836 F. App'x 73, 73-74 (2d Cir. 2021) (dismissing complaint for failing to allege that plaintiff was denied access to document).

In her complaint, Ms. Beiner clearly pled that she requested access to the Committee's decision and other documents related to its adjudication of Professor Maclin's misconduct and that the Committee refused to provide her access to those documents. *See* Compl. ¶¶ 30, 34.

Ms. Beiner's complaint also alleged that "[c]aselaw, experience, and logic all require that the documents created and relied upon during the Committee's adjudicatory process… are entitled to a presumption of access under the First Amendment." *Id.* ¶ 49. The complaint pleads how New York attorney disciplinary proceedings were historically held in a public forum, how other states allow public access to attorney disciplinary processes, and how public access diminishes risks of "injustice, incompetence, perjury, and fraud." *Id.* ¶¶ 38-39, 50-51. At the motion to dismiss stage, the Court must accept these allegations as true. *See Califano v. Roman Cath. Diocese of Rockville Ctr.*, No. 24 Civ. 4346, 2024 WL 4276170, at *3 (E.D.N.Y. Sept. 24, 2024).  Defendants' citations to two district court decisions from West Virginia and Texas are not even persuasive, much less binding. *Contra* Def. Br. at 23.

## CONCLUSION

For all these reasons, the Court should deny Defendants' motion to stay the proceedings and motion to dismiss Ms. Beiner's complaint.

Dated: June 18, 2025

Respectfully submitted,

/s/ Zoe Salzman
_____
Zoe Salzman
Hal R. Lieberman
Sydney Zazzaro
**Emery Celli Brinckerhoff Abady Ward & Maazel LLP**
One Rockefeller Plaza, 8th Flr.
New York, NY 10020
Telephone: (212) 763-5000
hlieberman@ecbawm.com
zsalzman@ecbawm.com
szazzaro@ecbawm.com

*Counsel for Plaintiff*

## LOCAL RULE 7.1 CERTIFICATION

In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the Memorandum of Law in Opposition to Defendants' Motion to Stay Proceedings or, in the Alternative, to Dismiss the Complaint contains 5,337 words of the 8,750 limit, exclusive of the caption, table of contents, table of authorities, and signature block.

June 18, 2025

    /s/ Zoe Salzman          
Zoe Salzman